IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| REGINA JACKSON AND RUDOLF WILLIAMSON, INDIVIDUALLY, AND ON BEHALF OF THE ESTATE OF RACHEL JACKSON, DECEASED<br><br>VS.<br><br>JOHN S. FORD, M.D., and TRAVIS COUNTY, TEXAS | CIVIL ACTION NO. A10CA522 SS |

## PLAINTIFFS ORIGINAL COMPLAINT

COMES NOW, Regina Jackson, and Rudolf Williamson, Individually, and on behalf of the Estate of Rachel Jackson, deceased, ("Plaintiffs") complaining of John S. Ford, M.D., and Travis County, Texas, ("Defendants") and would respectfully show the Court as follows:

### I. PARTIES

1.  Rachel Jackson, deceased, died in the custody of the Travis County Correctional Complex on or about July 21, 2008. She was a resident of Austin, Travis County, Texas.

2.  Plaintiff Regina Jackson is a resident of Austin, Travis County, Texas, and is the biological mother of the deceased Plaintiff, Rachel Jackson.

3.  Rudolf Williamson is a resident of Austin, Travis County, Texas, and is the

biological father of the deceased Plaintiff, Rachel Jackson.

4.    Defendant John S. Ford, M.D. is a medical doctor specializing in psychiatry. He is a resident of Spicewood, Burnet County, Texas, and lists his work address as 3614 Bill Price Rd, Del Valle, Travis County, Texas. He may be served with process by serving his attorney, Paul Byron Starr, at Germer, Gertz, Beaman & Brown, LLP, 301 Congress Ave., Ste 1700, Austin, TX, 78701.

5.    Defendant Travis County is a unit of government in Travis County, Texas. Defendant Travis County operates the Travis County Correctional Complex located 3614 Bill Price Rd., Del Valle, Travis County, Texas, 78617. Defendant Travis County may be served with process by serving Hon. Samuel T. Biscoe, County Judge, Travis County Attorney's Office, at 314 West 11th Street, Suite 520, Austin, Texas, 78701.

## II. NATURE OF THE SUIT AND NOTICE

6.    This is a suit for damages brought by the Plaintiffs against the Defendants for violations of the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment, under Title 42 U.S.C.A. § 1983; and for medical negligence, general negligence and gross negligence. Concurrent with the filing of this complaint Plaintiffs are mailing notice to counsel for Defendants pursuant to Tex. Civ. Prac. & Rem. Code sec. 74.051. See letters and proof of mailings attached hereto.

## III. JURISDICTION AND VENUE

7.    The Court has jurisdiction over the lawsuit under 28 U.S.C. § 1331 because the lawsuit involves a federal question, namely, violations of U.S. laws and of the Eighth and

Fourteenth Amendments of the U.S. Constitution.

8. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) because Defendants reside in this district and because substantially all of the events or omissions giving rise to the claim occurred in this district.

## IV. STATEMENT OF FACTS

9. Rachel Jackson had a history of mental illness and was experiencing uncontrolled psychosis when taken into custody on July 15, 2008. In the two years before the episode leading to her arrest, Rachel Jackson's psychosis had been largely controlled by anti-psychotic medication administered by the Texas Department of State Health Services.

10. On July 15, 2008, the jail nurse at the Travis County Correctional Complex refused to admit Rachel and instead recommended a health evaluation. Rachel was taken to Seton's Brackenridge Hospital for evaluation, where she was noted to be suffering from hallucinations, cognitive impairment, and reported to be tachycardic (high heart rate). Labs were ordered and drawn, and they showed Rachel to be hypokalemic (low serum potassium).

11. Rachel Jackson was then transferred back to the Travis County Correctional Complex and admitted there as an inmate from July 15, 2008 to July 21, 2008. During her incarceration Rachel was identified by jail ID numbers P-165465 and 0833294. She died in custody on July 21, 2008. She was 21 years old.

12. On July 15, 2008, Defendant Dr. Ford, the Travis County Correctional Complex facility psychiatrist, prescribed for Rachel two anti-psychotic drugs; risperadone and aripiprazole. They were two of the same drugs the Texas Department of State Health

Services had previously prescribed to Rachel with successful results. After administration of those prescriptions, Rachel had to be moved twice due to her behavior and voicing of suicidal ideations. On July 18, 2008, she told staff that her heart was racing. Dr. Ford visited Rachel and responded to her complaints by adding to her prescriptions a third anti-psychotic drug called thioridazine, otherwise known as Mellaril.

13. In July of 2000, ten years ago, the manufacturer of thioridazine, or Mellaril, wrote a "Dear Doctor or Pharmacist" letter warning providers of the dangerous arrhythmic effects the drug had upon the heart. A copy of this letter can be easily reviewed on the FDA's current website by searching either "thioridazine" or "Mellaril." The letter, based upon published studies conducted on humans evaluating effects of the drug on the heart, includes warnings that became boxed warnings on the drug's package inserts. The letter and the boxed warnings for Mellaril say the drug has been shown to prolong the QTc (QT interval corrected for heart rate), which can cause heart rate arrhythmias and sudden death. As a result, the manufacturer told doctors and pharmacists:

> Patients being considered for treatment with Mellaril should have a baseline ECG performed and serum potassium levels measured. Serum potassium should be normalized before starting treatment and patients with a QTc interval greater than 450 msec should not receive Mellaril.

14. An ECG was not performed on Rachel before she was prescribed and given thioridazine. Further, Rachel's serum potassium had been tested three days earlier and was reported to be abnormal, and no new serum lab testing was done. Despite the fact that the recommended precautions were not taken, and despite the fact that Rachel had on July 15th

been found to be tachycardic, had labs showing a low serum potassium, and had since complained of a racing heart, Dr. Ford not only prescribed the drug to Rachel but prescribed the drug to be taken at 100 mg, the strongest starting dose recommended.

15.   Further, thioridazine, or Mellaril, was prescribed to Rachel to be added to other two anti-psychotic drugs, both of which also prolong QTc.  In its letter to doctors and pharmacists, Novartis explained that "Mellaril is now contraindicated with certain other drugs, including . . . agents known to prolong the QTc interval."  According to Diana Gonzalez, pharmacist in charge at the Travis County Jail System Pharmacy, the adding of the prescription for thioridazine to the two QTc prolonging anti-psychotics that Rachel was already taking would only result in a "level 2" raising of the risks associated with contraindicated medications, and the pharmacist would not notify the doctor of a "level 2" risk.  This was pursuant to policy created by Diana Gonzalez, pharmacist in charge.

16.   On Saturday, July 19th, the day following her first night's dose of thioridazine, Rachel's Open Psych Status Notes report:

> Claims her chest is hurting / Unable to breathe / claustrophobic in room / settle down for a little bit / continues to press intercom very anxious / wants to go to state hospital

17.   Despite Rachel's complaints of chest pain, her elevated risk of sudden death by heart arrhythmia, and her continuous pleas for help, Rachel was denied medical attention.  Instead, she was given her 2nd dose of thioridazone on the night of the 19th, her third dose the night of the 20th, and in the early morning hours of July 21, 2008, Rachel was found dead in her bed.

All three doses of thioridazone were provided to Rachel by licensed nurses in what Travis County Correctional Complex refers to as "pill call."

18. Finally, Rachel had been housed in Building 3, Charlie Post, J Unit, Cell 1, from mid-day July 18, 2008, until her death in the early morning of July 21, 2010. The purpose of her being in that unit was that she was deemed to be a danger to herself, and corrections officers were supposed to look in on her every 15 minutes to verify that she was "a living, breathing body." By the time Rachel was found dead, however, rigor mortis had already begun to set in, indicating that hours had passed since her death.

19. The Medical Examiner who performed Rachel's autopsy noted Rachel's low potassium on July 15, 2008, and her complaints of rapid heart rate on July 17, 2008, and concluded that Rachel ". . . died as the result of complications of treatment for schizoaffective disorder."

## V. FIRST CAUSE OF ACTION
### DEPRIVATION OF CONSTITUTIONAL RIGHTS

20. Plaintiffs re-allege and incorporate the allegations alleged in paragraphs 1-19 as though they were fully set forth herein.

21. At all times material hereto Defendant Dr. Ford and the below identified agents and/or employees of Defendant Travis County, Texas' Travis County Correctional Complex were acting under color of state law. Defendant Dr. Ford and Defendant Travis County, Texas, by and through agents and/or employees of the Travis County Correctional Complex, were deliberately indifferent to the substantial risk of serious medical harm to Rachel Jackson, and to inmates generally, by:

a. prescribing and administering thioridazine, or Mellaril, knowing of the substantial risk that it could cause sudden death in the inmate to whom it was given;

b. prescribing and administering a drug prone to cause heart arrhythmia and sudden death to a person with low potassium;

c. prescribing and administering a drug prone to cause heart arrhythmia and sudden death to a person noted to be tachycardic in her most recent medical exam;

d. prescribing and administering a drug prone to cause heart arrhythmia and sudden death to a person complaining of a racing heart;

e. prescribing and administering a drug prone to cause heart arrhythmia and sudden death to a person with all of the above, already taking two anti-psychotic drugs that prolong QTc;

f. prescribing and administering a potentially deadly drug without performing the tests required to assure it can be taken without causing sudden death;

g. prescribing and administering a potentially deadly drug without obtaining and reviewing the inmate's medical records;

h. prescribing and administering a potentially deadly drug without reading the warnings written by the manufacturer;

i. formulating and using a policy that deliberately elects not to alert doctors of drug interactions that substantially increase serious risks to health;

j. formulating and using a policy that classifies the increased risk of heart arrhythmia and sudden death as "level 2," and not sufficient to alert to the provider;

k. prescribing and administering thioridazine, or Mellaril, while failing to inform those observing Rachel Jackson that she is on a drug capable of causing heart arrhythmias and sudden death by heart attack.

l. failing to take seriously repetitive complaints of chest pain, inability to breathe, and a feeling of claustrophobia, in a person with a history of tachycardia and low potassium, who is taking three drugs that prolong the heart's QTc interval;

m. failing to report to a doctor repetitive complaints of chest pain, inability to breathe, and a feeling of claustrophobia, in a person with a history of tachycardia and low potassium, who is taking three drugs that prolong the heart's QTc interval;

n. failing to get qualified medical care to a person with a history of tachycardia and low potassium, who is taking three drugs that prolong the heart's QTc interval, and who is complaining of chest pain, inability to breathe, and a feeling of claustrophobia

o. failing to provide an appropriate medical screening examination to investigate complaints including a racing heart, chest pain, and inability to breathe, and determine the risk of serious jeopardy, serious impairment to bodily functions, or serious dysfunction of any bodily organ or part;

p. continuing to administer a drug prone to cause heart arrhythmia and sudden death to a person with a history of tachycardia and low potassium, who is taking three drugs that prolong the heart's QTc interval, and who is complaining of chest pain, inability to breath, and a feeling of claustrophobia;

q. failing to adequately observe an at risk inmate regularly to make sure she is alive; and,

r. failing to discover that an at-risk inmate is ill or in jeopardy of dying until that inmate has been dead for several hours.

22. Each of the foregoing, and all of the foregoing combined, constitute a deprivation of Rachel Jackson's right against cruel and unusual punishment, as protected by the Eighth and Fourteenth Amendments of the U.S. Constitution. Further, the acts and omissions described above both evidence and result from official policies, customs and patterns of practice that each alone and collectively constitute a disregard of serious risks to health, and are the moving force behind the deprivation of Rachel Jackson's rights. Defendants' ratification of the aforementioned acts and/or omissions after the fact further evidence the policies, customs, and patterns of practice that were the moving force behind the deprivation of Rachel Jackson's rights.

23. As a result of said deprivations, Rachel Jackson suffered severe physical pain and mental anguish, and death; and Plaintiffs Regina Jackson and Rudolf Williamson suffered mental anguish and loss of consortium damages.

## VI. SECOND CAUSE OF ACTION
## MEDICAL NEGLIGENCE

24. Plaintiffs re-allege and incorporate the allegations alleged in paragraphs 1-23 as though they were fully set forth herein.

25. Defendant Dr. Ford and several of the relevant agents and/or employees of the Travis County Correctional Complex were health care providers, and as such, owed a duty to provide Rachel Jackson with at least the same standard of health care owed to the general public. These health care providers were negligent in that they breeched their respective duties owed to Rachel Jackson as described fully herein. Defendant Travis County agents or employees who are health care providers, and who negligently breeched duties owed to Rachel Jackson, include, but are not limited to,

   a. Diana Gonzales;

   b. the pharmacist who filled Rachel Jackson's prescription for thioridazine;

   c. the registered nurse(s) or licensed vocational nurse(s) who administered thioridazine Rachel Jackson; and,

   d. the registered nurse(s) or licensed vocational nurse(s) who did not evaluate Rachel Jackson, and did not call a doctor to report Rachel Jackson's condition and complaints.

The negligence of these health care providers was a proximate cause of Rachel Jackson's severe physical pain and mental anguish, and death; and of Plaintiffs Regina Jackson and Rudolf Williamson's mental anguish and loss of consortium damages.

26. Further, the negligent acts and/or omissions of Defendant Dr. Ford and the health care providers employed by Defendant Travis County constitute gross negligence.

## VII. THIRD CAUSE OF ACTION
## GENERAL NEGLIGENCE

27. Plaintiffs re-allege and incorporate the allegations alleged in paragraphs 1-26 as though they were fully set forth herein.

28. Defendant Travis County owed Rachel Jackson a duty of ordinary care as a result of Rachel Jackson's incarceration at the Travis County Correctional Complex. Defendant Travis County was negligent in that it breached its duties owed to Rachel Jackson by and through agents and/or employees including, but not limited to, the following:

   a. the pharmacist tech who filled Rachel Jackson's prescription for thioridazine;

   b. Mike Summers, the Director of Inmate Treatment Services, and/or individuals otherwise responsible for the formulation and enforcement of policies and procedures concerning the provision of medical care to inmates;

   c. the sergeants supervising each shift in Building 3, Charlie Post, J Unit, during Rachel Jackson's stay there from July 18 to 21, 2008; and,

   d. the correctional officers working each shift in Building 3, Charlie Post, J Unit, during Rachel Jackson's stay there from July 18 to 21, 2008.

The negligence of these individuals was a proximate cause of Rachel Jackson's severe physical pain and mental anguish, and death; and of Plaintiffs Regina Jackson and Rudolf Williamson's mental anguish and loss of consortium.

29. Further, the negligent acts and/or omissions of these individuals employed by Defendant Travis County constitute gross negligence.

## GOVERNMENTAL IMMUNITY

30. This suit falls outside the application of governmental immunity to the extent this suit at its heart involves the deprivation of federal constitutional rights. However, this suit otherwise falls squarely within the State of Texas' *waiver* of governmental immunity for Travis County to the extent that this suit alleges that Rachel Jackson's death was caused by the negligent use of thioridazine, or Mellaril. The State of Texas has waived governmental immunity for lawsuits against entities such as Defendant Travis County where the basis of suit is the negligent use of tangible personal property.

## DAMAGES

31. Plaintiffs re-allege and incorporate the allegations alleged in paragraphs 1-30 as though they were fully set forth herein.

32. As a result of the foregoing Rachel Jackson suffered severe physical pain and mental anguish, and death. Further, Plaintiffs Regina Jackson and Rudolf Williamson have suffered severe mental anguish and loss of consortium. These damages have been sustained in the past and will, in reasonable probability, continue into the future.

34. Additionally, because of the conduct of the Defendants, Plaintiffs have sought the services of attorneys to represent them in their claims, and the services of expert witnesses. Plaintiffs seek fees and costs associated therewith.

35. Plaintiffs' damages, exclusive of interest and costs, exceed the minimum jurisdictional limits of this Court.

## JURY DEMAND

Plaintiffs assert their rights under the Seventh Amendment to the U.S. Constitution and demand, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues.

## DEMAND FOR JUDGMENT

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully prays for judgment, upon final trial hereof, awarding actual damages, punitive/exemplary damages, pre-judgment interest, interest on the judgment at the lawful rate, costs of court, attorneys' fees, and such other and further relief, whether general or special, in law or in equity, to which they may show themselves justly entitled.

> Respectfully submitted,
> HENDLERLAW, P.C.
>
> Sean M. Lyons
> Texas Bar # 00792280
> 816 Congress Ave., Suite 1670
> Austin, Texas 78701
> Telephone: (512) 439-3200
> Facsimile: (512) 439-3201
> ATTORNEY FOR PLAINTIFFS