## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **REGINA JACKSON AND RUDOLF** | § | |
| **WILLIAMSON, INDIVIDUALLY, AND** | § | |
| **ON BEHALF OF THE ESTATE OF** | § | |
| **RACHEL JACKSON, DECEASED** | § | |
| *Plaintiffs,* | § | |
| | § | **CIVIL ACTION NO. A-10-CA-522-SS** |
| **vs.** | § | |
| | § | |
| **JOHN S. FORD, M.D., and** | § | |
| **TRAVIS COUNTY, TEXAS** | § | |
| *Defendants.* | § | |

## DEFENDANT TRAVIS COUNTY'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF THE DISTRICT COURT:

Pursuant to Federal Rule of Civil Procedure 56(b), Defendant Travis County moves for summary judgment in its favor, and asks the Court to dismiss Plaintiffs' claims against Defendant in their entirety. In support of this motion, Defendant offers the following:

## I. EVIDENCE

The following exhibits and their attachments are attached and fully incorporated herein:

| | |
|---|---|
| **Exhibit A:** | Affidavit of Sheriff Greg Hamilton |
| **Exhibit A-1:** | Sheriff Hamilton's current resume |
| **Exhibit A-2:** | TCSO's relevant Policies and Procedures |
| **Exhibit A-3:** | Excerpts from TCSO's Internal Affairs Report |
| **Exhibit B:** | Affidavit of Darren Long |
| **Exhibit B-1:** | Certificates of Compliance with Jail Standards |
| **Exhibit B-2:** | TCSO's relevant protocols |
| **Exhibit B-3:** | Excerpts from Ms. Jackson's TCSO Inmate files |
| **Exhibit B-4:** | Excerpts from Ms. Jackson's Medical File of July 2008 |
| **Exhibit C:** | Excerpts from Nurse Arnie Waden's deposition transcript |
| **Exhibit D:** | Excerpts from Mike Summers' deposition transcript |
| **Exhibit E:** | Excerpts from Diana Gonzalez's deposition transcript |
| **Exhibit F:** | Excerpts from Plaintiffs' expert Dr. Ray's deposition transcript |
| **Exhibit G:** | Excerpts from the Medical Examiner's deposition transcript |
| **Exhibit G-1:** | Excerpts from the Medical Examiner's Investigation and Report |
| **Exhibit H:** | Affidavit of Alero Walker |
| **Exhibit I:** | Excerpts from Dr. Ford's deposition transcript |

## II. STANDARD OF REVIEW

A party is entitled to summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett*, 106 S.Ct. 2548 (1986). An adverse party may not rely on mere allegations or denials, but must articulate specific facts showing there is a genuine issue for trial. *Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 433 (5th Cir. 1995). The Fifth Circuit has clearly stated that "[n]either 'conclusory allegations' nor 'unsubstantiated assertions' will satisfy the non-movants's burden." *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). A failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists. *Saunders v. Michelin Tire Corp.*, 942 F.2d 299, 301 (5th Cir. 1991). If the non-moving party fails to make the necessary showing, the moving party is entitled to judgment as a matter of law. *Celotex*, 106 S.Ct at 2552.

## III.  PROCEDURAL BACKGROUND

On July 14, 2010, exactly one week prior to the statute of limitations deadline, Plaintiffs filed their lawsuit naming Defendants John S. Ford, M.D. and Travis County, Texas. **[Dkt. 1]** On August 10, 2010, Defendant Travis County, Texas filed its Answer, Affirmative Defenses and Demand for Jury Trial. **[Dkt. 6]** On December 8, 2010, the Court issued a Scheduling Order. **[Dkt. 12]** On August 19, 2011, Defendant Travis County, Texas filed is Motion to Dismiss Pursuant To Rule 12(c). **[Dkt.34]**[1] On September 6, 2011, Plaintiffs filed their Response to Travis County's 12(c) Motion to Dismiss. **[Dkt. 39]** On September 9, 2011, Defendant Travis County filed its Reply to Plaintiffs' Response to Travis County's Motion to Dismiss Pursuant to Rule 12(c). **[Dkt. 40]**

## IV.  FACTUAL BACKGROUND

Rachel Jackson was arrested on July 15, 2008, by Austin Police Department ("APD") on a warrant for a Motion to Revoke her Probation for Delivery of a Controlled Substance. **Ex. B-3 at 2450546**. APD discovered Ms. Jackson at a disturbance in the street where Ms. Jackson was wearing only her panties and bra. **Ex. G-1 at 2600179**. Ms. Jackson admitted to smoking formaldehyde and was

---

[1] Travis County hereby incorporates by reference as if fully set out herein its arguments from its 12(c) Motion to Dismiss [Dkt. 34] and its reply to Plaintiffs' Response. [Dkt. 40]

"sweating profusely." **Id**.  At one point, Ms. Jackson lay down on the ground, raised her knees over her head and urinated on herself.  **Id**.  Due to her erratic behavior, and poly substance abuse, Ms. Jackson was taken to Brackenridge Hospital. **Id. and Ex. B-4 at 2450639.**  At Brackenridge Hospital, Ms. Jackson was treated for a "possible ingestion of PCP w/acute agitation." **Ex. B-4 at 2450600 and 2450632.**  As a result, Ms. Jackson received two injections of Ativan as well as an intravenous saline solution. **Ex. B-4 at 2450600, 2450635 and 2450636.**  Ms. Jackson's vital signs were checked multiple times while at the hospital. **Ex. B-4 at 245632**.

Ms. Jackson was released from the hospital at approximately 7:25 a.m. and booked into the Travis County Jail ("TCJ"). **Ex. B-3 at 2450546.**  Travis County Sheriff's Office ("TCSO") medical personnel saw Ms Jackson at 8:00 a.m. as part of the initial medical screening intake process where Ms. Jackson's vital signs were taken and recorded as within the normal range. **Ex. B-4 at 2450614.**  Ms. Jackson reported a history of schizophrenia. **Id.**  Ms. Jackson was placed in the safety cell for observation and for her safety, and the counselor on call was paged. **Ex. B-3 at 2450547-2450548 and Ex. B-4 at 2450614.**

On that first day in custody, TCSO Counselor Paul Parsons #4083 spoke to Rachel Jackson. **Ex. B-3 at 2450547, Ex. B-4 at 2450620-2450625.** Counselor Parsons completed the TCSO Mental Health Assessment for Rachel Jackson, noting Ms. Jackson's previous medical history including treatment for schizoaffective disorder and treatment for mental health disorders at ATCHMHMR. **Id**.  Counselor Parsons also noted Ms. Jackson's previous prescriptions for anti-psychotic drugs. **Id.** As part of Ms. Jackson's mental health care at TCSO, Counselor Parsons recommended that Ms. Jackson be flagged as a special needs inmate, a priority population diagnosis and to follow up on the psych line. **Ex. B-4 at 2450625.** Counselor Parsons recommended housing in psych observation for Ms. Jackson while she remained at TCJ. **Ex. B-4 at 2450612 and 2450625.**

The contract psychiatrist, Dr. Ford, also saw Rachel Jackson on July 15, 2008, and prescribed Abilify and Risperdal and scheduled a follow up appointment for the following day. **Ex. B-4 at 2450611.** Dr. Ford further ordered that Ms. Jackson be moved to psych lockdown. **Ex. B-4 at 2450611.**  Several

nurses saw Ms. Jackson on that first day; Nurse Geiger reported that Ms. Jackson "appears sleepy" and "[slightly] unsteady on feet." **Ex. B-4 2450601**.  Nurse Geiger took Ms. Jackson's vitals and reported them to be 106/60, 76. **Ex. B-4 at 2451067.**  Nurse Anderson reported Ms. Jackson as "very agitated," "tearful and frantic" and also took and recorded Ms. Jackson's vitals. **Ex. B-4 at 2450601**.

Due to Ms. Jackson's escalating anger and threats of self harm, Counselor Parsons recommended continued full suicidal precautions for Ms. Jackso**n. Ex. B-4 at 2450619.**  Ms. Jackson was given her dose of Abilify and Risperdal, as prescribed by Dr. Ford**. Ex. B-4 at 2450597 and 2450598.**  Later that afternoon, Barbara Kelly, RN reported that Ms. Jackson had been acting out since after supper and started banging her head. **Ex. B-4 at 2450601, 2450616 and 2450630.** Officer Garcia reported that between 6:05 p.m. and 6:45 p.m., Ms. Jackson continued to kick and bang the door and refused verbal instructions to stop. **Ex. B-3 at 2450573**.  Dr. Ford was notified and Ms. Jackson was placed in the restraint chair for her own protection and was given an injection of Abilify 9.75 mg in her right deltoid at 6:45 p.m. **Ex. B-4 at 2450597, 2450610 and 2450616.**  Ms. Jackson continued to scream and act out for about an hour and threatened and spit in an officer's face when he came in to check on her and to re-secure Ms. Jackson's foot that she had managed to remove from the restraint. **Ex. B-3 at 2450573-2450574 and Ex. B-4 at 245601.**  While in TCJ medical housing, Ms. Jackson remained on full suicidal precautions with thirty minute visuals. **Ex. B-3 at 2450583.**

At almost midnight on July 15, 2008, Rachel Jackson was transferred from the TCJ to the Travis County Correctional Complex ("TCCC") in Del Valle. **Ex. B-4 at 2450601**.  Ms. Jackson was placed on full suicidal precautions ("FSP") and housed in 3VC1 (TCCC, Building 3, Post C). **Ex. B-3 at 2450555-2450557 and 2450218** and **Ex. B-4 at 2450601.**  It is noted on the 24-hour Activity Report that Ms. Jackson was observed as quiet and in no distress during the 7-3 shift and ate per orders and took her medication. **Ex. B-4 at 2450630.**  Dr. Ford followed up with Ms. Jackson on July 16, 2008, noting her behavior the previous evening. **Ex. B-4 at 2450608**.  Dr. Ford ordered continued housing in 3VC1 and scheduled a follow up for the next day. **Ex. B-4 at 2450608.**  Dr. Ford followed up with Ms. Jackson on July 17, 2008, noting that Ms.

Jackson was on Risperdal and Abilify as ordered. **Ex. B-4 at 2450607**. Dr. Ford ordered continued housing in 3VC1 and scheduled a follow up the next day. **Ex. B-4 at 2450607.**

It is noted on the 24-hour Activity Report on July 18, 2008, at 2:30 a.m. that Ms. Jackson was observed lying on the floor in a quilted gown, breathing and in no distress. At 2:49 a.m. Ms. Jackson was given water and signed a waiver for 15 days lockdown. **Ex. B-3 at 2450594**. The 15-day lockdown was the disciplinary measure assessed against Ms. Jackson for rule violations (1) threatening; and (2) propelling substances (spitting) while at Central Booking on July 15, 2008. **Ex. A-3 at 2450099 and Ex B-3 at 2450573-2450574**. Approximately thirty minutes later, at 3:20 a.m., Ms. Jackson reported to a corrections officer that her heart was racing. **Ex. B-3 at 2450594**. Medical was called and at 3:31 a.m. Nurse Arnie (Arnold Waden), arrived to check Ms. Jackson's blood pressure. **Exs. C and B-3 at 2450594**. For the three hours following Nurse Waden's visit, Ms. Jackson was observed sitting, standing and lying down. **Ex. B-3 at 2450594**. At 6:31 a.m., Ms. Jackson was eating breakfast. **Ex. B-3 at 2450594**. At 9:48 a.m. on July 18, 2008, Dr. Ford reassessed Ms. Jackson and noted that she was taking her medication. Ms. Jackson reported to Dr. Ford that "its helping me with my mood swings." **Ex. B-3 at 2450594 and B-4 at 2450606**. Dr. Ford ordered Mellaril 110 mg HS, and for Ms. Jackson to be discharged from full suicidal precautions ('FSP') to psych lockdown. **Ex. B-4 at 2450605 and 2450606.** A follow up appointment with Dr. Ford was scheduled for July 23, 2008**. Ex. B-4 at 2450606.** Ms. Jackson never made that appointment, because she died in her sleep on the night of July 20 / morning of July 21, 2008. **Ex. B-4 at 2450603.** On July 21, 2008 at 5:45 a.m., a medical emergency was called for Building 3, Post C. **Ex. A-3 at 2450132**.

## V. ARGUMENT AND AUTHORITIES

### 1. PLAINTIFFS' FEDERAL CLAIMS AGAINST TRAVIS COUNTY

Plaintiffs sue Travis County for a "deprivation of constitutional rights" pointing to a laundry list of actions taken by an independent contractor psychiatrist and employees of Travis County. **Comp. at pp. 6-8**. Plaintiffs list isolated incidents to claim that Travis County was "deliberately indifferent to the substantial risk of serious medical harm to Rachel Jackson…" **Id**. Further, Plaintiffs point to non-existent

policies, or "policies" allegedly formulated by someone other than the official policymaker for TCSO, Sheriff Hamilton. **Id**.  Lastly, Plaintiffs plead that the acts or omissions that they allege endangered Rachel Jackson's life "both evidence and result from official policies, customs and patterns of practice" and that Travis County's "ratification of the aforementioned acts and/or omissions after the fact further evidence the policies…" **Comp. at p. 8**.

**A. Plaintiffs Fail to State Any Unconstitutional Policy, Custom or Practice**

A governmental unit cannot be held responsible for civil rights violations under a theory of respondeat superior. *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992).  Plaintiffs attempt to hold Travis County vicariously liable, but supervisory officials and municipalities cannot be held liable in §1983 cases solely on the basis of their employer-employee relationship.  *Monell v. Department of Social Services*, 436 U.S. 658, 693, 98 S. Ct. 2018, 2037 (1978).  There must be a custom or policy that caused the plaintiff to be subjected to the deprivation of a constitutional right.  *Id.*

Plaintiffs have suggested that Diana Gonzalez, a pharmacist at the jail, created official policy which caused Rachel Jackson's death (**Comp. at p. 5**) but the evidence is clear that Diana Gonzalez is not an official policymaker. **Exs. A and E at pp. 130-131**.  The Fifth Circuit has held that "the existence of official policymaking authority is a question of law to be decided by the Court." *Tharling v. City of Port Lavaca*, 329 F.3d 422, 427 (5th Cir. 2003).  In light of both Texas constitutional provisions as well as Chapter 85 of the Texas Local Government Code, "it has long been recognized that, in Texas, the county sheriff is the county's final policymaker in the area of law enforcement…"  *See Turner v. Upton County*, 915 F.2d 133, 36 (5th Cir. 1990).  According to the Fifth Circuit, it is crucial that Plaintiffs are prepared "to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself."  *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

Plaintiffs claim Travis County was deliberately indifferent to the substantial risk of serious medical harm to Rachel Jackson, and list eighteen different actions taken by employees or Dr. Ford that

they claim "both evidence and result from official policies, customs and patterns of practice" but Plaintiffs fail to identify any actual official policy as the moving cause behind their injury. **Comp. at pp. 6-8**. Moreover, several of the actions Plaintiffs list, such as "failing to adequately observe an at risk inmate regularly to make sure she is alive" (**Comp. at p. 8**) were specifically contrary to TCSO policy, and the internal affairs investigation resulted in an officer leaving TCSO in lieu of being fired as discipline for the infraction. **Ex. A-3 at 2450038-40**. That employee became ineligible for rehire due to the investigation and report of the Internal Affairs division. **Id**. Plaintiffs allege that "failing to get qualified medical care" is another result of official policy (**Comp. at p. 8**), but it is clear from TCSO's policies that precisely the opposite is true: Sheriff Hamilton has adopted policies in order to entitle inmates access to medical care. **Exs. A and A-2**. It is also evidenced by the Texas Commission on Jail Standard's approval of the Travis County Jail that TCSO does not have a practice of neglecting medical care for its inmates. **Ex. B-1**.

Plaintiffs list "prescribing and administering thioridazine, or Mellaril, knowing of the substantial risk that it could cause sudden death in the inmate" as an act or omission evidencing from official policies, but that action was the single decision of a licensed physician. **Comp. at p. 7**. Dr. Ford was an independent contractor and not a policymaker for TCSO. **Ex. I at pp. 25 and 113**. Sheriff Hamilton, the official policymaker of TCSO, did not instruct Dr. Ford on how to treat his patients, nor did he interfere with the provision of medical care by licensed physicians. **Exs. A and I at pp. 110-111**. Dr. Ford is a licensed physician, board certified in psychiatry. **Ex. I at p. 24**. Dr. Ford weighed the risks and benefits of prescribing that particular antipsychotic medication to Rachel Jackson and his medical opinion determined that "the benefits of the Mellaril outweighed the risks." **Ex. A-3 at 2450050**. That decision may be the basis for a medical negligence claim against Dr. Ford, but negligence in medical care amounts to medical malpractice and does not reach a constitutional violation merely because the plaintiff is a prisoner. *Estelle v. Gamble* 429 U.S. 97, 106, 97 S.Ct. 285, 292 (1976).

Plaintiffs' constitutional complaint includes allegations of "failing to take seriously repetitive complaints of chest pain, inability to breathe, and feelings of claustrophobia" but there is no policy of disregarding chest pain.  There are only two documented complaints from Ms. Jackson other than to her doctor.  **Complaint at p. 7**.  On July 18, 2008, at 3:20 a.m., a post officer noted in the log book that Ms. Jackson "stated her heart is racing.  Medical notified will come check blood pressure." **Ex. A-3 at 2450127**.  On that same document, at 3:31 a.m., it is recorded "Nurse Arnie checking blood pressure." **Id**.  Although Nurse Andrew Waden ("Arnie") failed to record his notes as he should have, he testified under oath that if there was anything out of the ordinary in her vital signs, he would have documented it and taken some action. **Ex. C at p. 90**.  When questioned as to what it meant that no documentation existed of Nurse Waden's findings on Ms. Jackson, he stated "It absolutely means to me that everything was – was normal at that time."  **Id. at p. 91**.

The only other complaint made by Ms. Jackson to someone other than her psychiatrist at the jail was recorded on Open Psych Status Notes from July 19, 2008. **Ex. A-3 at 2450136**.  According to post officer Alero Walker, Ms. Jackson complained "chest is hurting/unable to breathe/claustrophobic in room…" **Id**.  The Open Psych Status Notes are a form filled out to record an inmate's behavior for later review by counselors. **Ex. H at p. 2**.  Ms. Walker was familiar with Ms. Jackson from her prior incarcerations, and knew that she had been housed in general population in the past.  **Id**.  Inmates frequently complain about the restrictive housing unit where Ms. Jackson was on July 19, 2008, because it is a small room with less time out of the cell for recreation or day room time. **Id**.  When Ms. Jackson complained, an officer opened the food chute to circulate air in the cell, and Ms. Jackson quieted down. **Id**.  Later, Ms. Jackson took her hour out of her cell, cleaned her cell, and ate her meal and showered without any problem.  **Id. and Ex. A-3 at 2450136**.  When Ms. Walker found out that Ms. Jackson had passed away a couple of days later, she was surprised because she had appeared fine at their last encounter. **Id**.

Ms. Walker should have called medical. TCSO policies provide that "Licensed Nurses will be available 24 hours a day, 7 days a week." **Ex. A-2 at 2452565**. This same policy entitles inmates to submit individual complaints that will be reviewed by nursing staff for assessment. **Id**. "Inmates requiring emergency treatment or triage will be assessed for appropriate care on an individual basis at anytime." **Id**. "On site emergency health care is provided 24 hours a day, 7 days a week by on duty licensed medical personnel..." **Ex. A-2 at 2452568**. TCSO policies also dictate that "Corrections Officers will be provided training in signs and symptoms of emergency conditions, mental illness, retardation and chemical dependency as well as appropriate response including first aid and CPR." **Ex. A-2 at 2452569**. Moreover, the protocols for the building where Ms. Jackson was housed specifically mention "pain in chest and shortness of breath" as part of a list for officers to determine when to call a medical emergency. **Ex. B-2 at 2453680**. It is general practice at TCSO that complaints of chest pains are taken seriously, conveyed from the officers to medical staff, as Dr. Ford and Mike Summers both point out in their depositions. **Ex. I at p. 95 and Ex. D at p. 68**. In Nurse Waden's deposition, when asked if he recognized the possibility that officers might not relay complaints to the medical staff, he responded under oath that "No. It's very unusual, I would say." **Ex. C at p. 79**. Plaintiffs point to one officer who failed to follow policy of taking complaints of chest pain seriously, and reporting them to medical staff, but that failure is not TCSO policy. "Isolated violations are not the persistent, often repeated, constant violations that constitute custom and policy." *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984), *cert. denied*, 472 U.S. 1016 (1985). Simply because one officer used her discretion in good faith and made a mistake does not create a policy, custom or practice. The Fifth Circuit has consistently held "a single instance of misconduct insufficient to subject a local governmental unit to §1983 liability, since 'a municipality cannot be held liable solely because it employs a tortfeasor.'" *Webster v. City of Houston*, 735 F.2d 838, 851 (5th Cir. 1984)(internal citations omitted).

Plaintiffs complain that "Defendants' ratification of the aforementioned acts and/or omissions after the fact further evidence the policies" but this misstates the law. **Comp. at p. 8**. The Fifth Circuit

has stated that "for a city to be held liable we have required an identifiable causal connection between some action or inaction by the city and the asserted constitutional deprivation." *Webster,* 735 F.2d at 851. The Court concluded that "an isolated decision not to discipline an officer after a single episode of illegality could not itself supply the causal link." *Id.* The Supreme Court has limited municipal liability on a ratification theory because "[i]f the mere exercise of discretion by an employee could give rise to a constitutional violation, the result would be indistinguishable from respondeat superior liability." *St. Louis v. Praprotnik*, 485 U.S. 112, 120, 99 L.Ed. 2d 107 (1988).

**B. Even if the Court Found an Unconstitutional Policy, Plaintiffs Lack Causal Link**

"In addition to culpability, there must be a direct causal link between the municipal policy and the constitutional deprivation." *Piotrowski v. City of Houston*, 237 F.3d 567 (5th Cir. 2001). Although Defendants argue that Plaintiffs' Complaint fails to identify a specific official policy adopted or maintained by a deliberately indifferent official policymaker, even if there were both a policy and a deliberately indifferent policymaker, Plaintiffs must still demonstrate that the policy or custom was the "moving force" behind the violation of their constitutional rights. *City of Canton v. Harris*, 489 U.S. 378 (1989). The attenuated causation of the injury suffered by Ms. Jackson, in addition to the fact that Plaintiffs' Complaint largely blames a doctor who is an independent contractor and a professional who uses his own judgment in treating his patients makes this a medical malpractice case, not a civil rights claim against a municipality.

"Section 1983 does require a showing of proximate causation, which is evaluated under the common law standard." *Murray v. Earle*, 405 F.3d 278, 290 (5th Cir. 2005)(citing *Sims v. Adams*, 537 F.2d 829, 831 (5th Cir. 1976)). The Medical Examiner is Plaintiffs' only expert on causation and he admitted under oath that it was not a certainty that a medication combination caused Rachel Jackson's death. **Ex. G at p. 153**. It is clear from both the Medical Examiner's Report as well as his deposition testimony that there are serious questions concerning the actual cause of death in Ms. Jackson's case. **Exs. G and G-1**. Ms. Jackson had a congenital arachnoid cyst. **Ex. G at p. 60**. One of the Medical Examiner's findings in his report on Ms.

Jackson's death was a possible seizure. **Ex. G-1 at 2600102**. Ms. Jackson had a history of chronic poly substance abuse (**Ex. B-4 at 2450621 and 2450639**); she admitted "smoking wet" (**Id. at 2450617**), using PCP (**Id. at 2450623**) and she self-reported substance abuse (**Id. at 2450625**). She tested positive for benzodiazepine, cocaine and cannabinoid on the day of her arrest. **Ex. G-1 at 2600111**. Additionally, Rachel Jackson suffered from serious mental illness. **Ex. B-4**. She had been hospitalized at Austin State Hospital, where she was diagnosed with bipolar I manic with psychotic features. **Ex. G-1 at 2600176**. Austin-Travis County MHMR diagnosed her with schizoaffective disorder, as well as cannabis abuse. **Ex. G-1 at 2600128**. She had a history of suicide attempts. **Ex. B-4 at 2450626 and Ex. G-1 at 2600131**. She at times lived on the streets **Ex. G-1 at 2600128**. Less than a week before her death, Brackenridge records document tachycardia. **Ex. B-4 at 2450638**. Rachel Jackson had extensive juvenile records (**Ex. B-4 at 2450626**) and at the age of twenty-one, she had been to the adult jail on nine separate occasions. **Ex. B-3**. Her short life was filled with trauma, illness and addiction and although her death was a tragedy, there is no causative link between Travis County's actions and the death of Rachel Jackson.

**B. Plaintiffs Fail to Allege Any Constitutionally Deficient Medical Care Under §1983**

Plaintiffs claim Defendants are at fault because "Rachel was denied medical attention." **Complaint at p. 5.** Plaintiff's TCSO medical records show the contrary. **Ex. B-4**. Moreover, claims of inadvertent failure to provide medical care are insufficient to state a claim of inadequate medical care. *Wilson v. Seiter*, 501 U.S. 294, 297, 111 S. Ct. 2321, 2323 (1991). In Rachel Jackson's case, she received numerous consultations, examinations, treatment and medications, negating a showing of deliberate indifference. **Ex. B-4**; *Bass v. Sullivan*, 550 F.2d 229 (5th Cir. 1977); *McCord v. Maggio*, 910 F.2d 1248, 1251 (5th Cir. 1990). Rachel Jackson was seen by counselors, nurses and psychiatrists on multiple occasions during her incarceration at TCCC. **Exs. B-3 and B-4.** Dr. Ford, a board-certified licensed psychiatrist, saw Ms. Jackson every day of Ms. Jackson's first four days in custody. **Exs. I and B-4 at 245606-245612**. Ms. Jackson was incarcerated for less than a week before she died, and during that time, she was seen by a psychiatrist four times and was seen by multiple nurses while in custody. **Exs. B-3 and B-4**.

A claim of medical malpractice does not amount to a constitutional violation merely because the plaintiff is a prisoner. *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976).  To state a claim for inadequate medical treatment, a plaintiff must allege acts or omissions sufficiently harmful to evidence a "deliberate indifference to serious medical needs." *Estelle*, 429 U.S. 97, 104-05, 97 S.Ct. 285, 291 (1976).  Individual prison officials act with deliberate indifference only if they know that an inmate faces a substantial risk of serious bodily harm and they disregard that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 847, 114 S.Ct. 1970, 1984 (1994).  No individual Travis County employees are sued in this case.  There is ample evidence in the record to show that Rachel Jackson received medical care while incarcerated in Travis County.  **Exs. B-3, B-4 and G-1**. There is no evidence to support Plaintiff's claim that her death was the result of unconstitutional policies adopted or maintained with deliberate indifference.

The TCSO medical records document that the decisions regarding Ms. Jackson's mental health treatment and prescriptions were made by a board-certified, licensed physician.  **Exs. I and B-4**.  All of the medical staff treating Ms. Jackson acted in good faith.  **Exs. B-4, C, D, E and I**.  Dr. Ford prescribed medication to treat Ms. Jackson's multiple mental illnesses and according to the pharmacist, the medication dosages were significantly less than the average recommended dosage amounts.  **See Exs. B-4 and E, pp 120-122**.  Plaintiffs complain of medical negligence, but claims of inadequate or improper medical treatment amounting to no more than mere negligence, neglect, or medical malpractice do not amount to a violation of the Eighth Amendment.  *Estelle*, 429 U.S. at 105, 97 S.Ct. at 291.

Plaintiffs complain of "acts and omissions" which they allege "evidence and result from official policies, customs and patterns of practice" (**Complaint at p. 8**) but the crux of their complaint is that Rachel Jackson was prescribed Mellaril, which was contraindicated with the other medication she was taking.  These medications were prescribed by Dr. Ford, a licensed, board certified psychiatrist who was an independent contractor, not a policymaker for Travis County.  **Ex. I at pp 24, 25 and 113**.  When interviewed by a TCSO Internal Affairs investigator, "Dr. Ford stated that it was his belief that the

benefits of the Mellaril outweighed the risks." **Ex. A-3 at 2450050**.  Additionally, Dr. Ford prescribed a low dosage of all three medications. **Ex. E at pp. 121-122**.  When Dr. Ford prescribed Mellaril for Rachel Jackson, "the dosage used was 1/8 of the maximum dose recommended." **Ex. A-3 at 2450050**.  Even if the prescribing physician erred in changing her prescriptions, the case law is clear that negligent diagnosis, unsuccessful medical treatment or disagreements between an inmate and his doctor regarding the manner of treatment do not give rise to a constitutional claim of inadequate medical care.  *Wilson v. Seiter*, 501 U.S. 294, 297, 111 S.Ct. 2321, 2323 (1991);  *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).

Adequate evidence of sick calls, examinations, diagnosis, and medication negate a showing of deliberate indifference.  *Bass v. Sullivan*, 550 F.2d 229 (5th Cir. 1977); *McCord v. Maggio*, 910 F.2d 1248, 1251 (5th Cir. 1990) (neither deliberate indifference to medical needs nor wanton infliction of pain is shown when medical records exist, documenting assessment and treatment of inmate's medical complaints).  It is clear from Plaintiff's TCSO Medical File as well the deposition transcripts of licensed medical professionals attached to this motion, that Rachel Jackson received treatment from the medical staff at TCSO. **Exs. B-4, C, D, E and I**.  In less than one week, she was seen by Dr. Ford on four separate occasions.  **Exs. B-4 and I**.  All of the examinations, evaluations and treatment of Plaintiff negate a showing of subjective deliberate indifference on the part of TCSO required to prove a claim for inadequate medical care.  *Scott v. Moore*, 14 F.3d 51, 54 (5th Cir. 1977) (*en banc*).  Accordingly, Plaintiffs' §1983 claims against Travis County should be dismissed.

## 2. PLAINTIFFS' STATE LAW CLAIMS AGAINST TRAVIS COUNTY

Plaintiffs have sued Travis County for both medical negligence and general negligence, and no individual Travis County employees were sued. **Comp. at pp. 9,10**.  The common law principle of sovereign immunity shields the state and its agencies from both suit and liability unless there has been a waiver of such immunity by the legislature.  *Dep't of Agric. and Env't. v. Printing Indus. Ass'n of Texas*, 600 S.W.2d 264 (Tex. 1980); *Travis County v. Pelzel & Assocs.*, 77 S.W. 3d 246, 248 (Tex. 2002); Tex.

Civ. Prac. & Rem. Code Chapter 101.  In the absence of a clear statutory waiver of such immunity, the State has no liability for damages pursuant to the doctrine of sovereign immunity.  *Bagg v. Univ. of Texas Medical Branch,* 726 S.W. 2d 582 (Tex. App. - Houston [14th Dist.] 1987, writ ref'd n.r.e.).

## A.  Travis County is Entitled to Sovereign Immunity to Medical Negligence Claims

Medical negligence in Texas is governed by the Texas Medical Liability Act.  See Tex. Civ. Prac. & Rem. Code Chapter 74 et seq. (Medical Liability).  It is worth noting that this is not a diversity case, but a federal question case where all parties reside in the state of Texas.  Medical negligence is a state court cause of action.  Plaintiffs have not complied with any of the notice prerequisites or expert report and qualification requirements of the Texas Medical Liability Act.  *Id.*, subchapters B, H, and I.   Plaintiffs appear to be under the impression that they do not have to comply with these requirements because they have filed in federal court.  Although that may be true for diversity cases, Defendants have not found a similar waiver of these provisions in a federal question case.[2]  In paragraph 25 of Plaintiffs Complaint, they list the following Travis County agents, employees or "healthcare providers" who they allege negligently breached duties owed to Rachel Jackson:

a)  Diana Gonzales [sic];
b)  The pharmacist who filled Rachel Jackson's prescription for thioridazine;
c)  The registered nurse(s) or licensed vocational nurses who administered thioridazine [to] Rachel Jackson; and
d)  The registered nurse(s) or licensed vocational nurse(s) who did not evaluate Rachel Jackson, and did not call a doctor to report Rachel Jackson's complaints

Plaintiffs have not specifically named or identified the nurses who are alleged to have failed to evaluate Ms. Jackson or allegedly failed to call a doctor to report her complaints.  Regardless, as a matter of law, sovereign immunity has not been waived in medical negligence cases.  See Tex. Civ. Prac. & Rem.

---

[2] See *Guzman v. Mem'l Herman Hosp. Sys.*, 2008 U.S. Dist Ct. LEXIS 101781 (S.D. Tex. Dec. 17, 2008); but see, *Chapman v. U.S.*, 353 Appx. 911, 2009 LEXIS 25587.

Code Sec. 74.003 (Medical Liability).[3]  As such, Plaintiffs' claims for medical negligence against Travis

County (Comp. at paragraphs 24, 25 and 26) should be dismissed.[4]

**B. Plaintiffs' Tort Claims Fail to Fit within the Limited Waiver of Immunity set out in the Texas Tort Claims Act, and Therefore Travis County is Entitled to Sovereign Immunity to Plaintiffs' "General Negligence" Claims**

As Travis County is a governmental entity, the doctrine of governmental immunity shields it from

liability for the negligence of its employees absent a waiver of that immunity.  *Univ. of Tex. Med. Branch*

*at Galveston v. York*, 871 S.W. 2d 175, 177, 37 Tex. Sup. Ct. J. 444 (Tex. 1994).   The waiver of

sovereign immunity provided by the Texas Tort Claims Act is specific and limited in scope, holding a

governmental unit liable for property damage, personal injury, or death arising from the operation or use of

a motor-driven vehicle; or personal injury and death caused by a condition or use of tangible personal or

real property by an employee.[5]   TEX. CIV. PRAC. & REM. CODE §101.021.   Plaintiffs have not pled that

Rachel Jackson's death arose from the operation or use of a motor driven vehicle, nor do they claim that her

death was the result of a condition of real property.   It appears from Plaintiffs' pleadings that their claim is

that Rachel Jackson's death was caused by a condition, misuse or use of tangible personal property by an

employee.   In the section of their Complaint entitled "General Negligence," Plaintiffs allege that Defendant

Travis County was negligent in that it breached its duties owed to Rachel Jackson by and through agents

and/or employees including, but not limited to the following:

    a.  the pharmacist tech who filled Rachel Jackson's prescription for thioridazine;

    b.  Mike Summers, the director of Inmate Treatment Services, and/or individuals otherwise responsible for the formulation and implementation of policies and procedures concerning the provision of medical care to inmates;

    c.  the sergeants supervising each shift in Building 3, Charlie Post, J Unit, during Rachel Jackson's stay there from July 18 to 21, 2008; and,

    d.  the correctional officers working in each shift in Building 3, Charlie Post, J unit, during Rachel

---

[3] Section 74.003 states: "This chapter does not waive sovereign immunity from suit or liability."

[4] Moreover, a 2011 Texas Supreme Court ruling that provides that the amendments in language and resulting changes in interpretation of Section 101.106 of the Texas Tort Claims Act "changes, among other things, the rule in *Kassen v. Hatley* which has allowed malpractice suits against physicians employed by the government.  Recovery for the negligence of a government physician acting in the course and scope of employment would be limited to that afforded by the [Texas Tort Claims] Act."  *Franka v. Velasquez*, 332 S.W. 3d 367, 375 (Tex. 2011); *see also Rossett v. Wilson*, 2011 Tex. App. LEXIS 3494 (App- [4th Dist] San Antonio).  The same reasoning can be extended to other medical professionals such as nurses, and pharmacists.

[5] Dr. Ford is not an employee of Travis County and is therefore represented by his own counsel.  See Ex. I at p.25.

Jackson's stay there from July 18 to July 21, 2008.

Although the section of their complaint entitled "General Negligence" contains no allegations regarding the condition, use or misuse of tangible personal property (Complaint at pp. 10-11, para. 27-29), their complaint contains a separate section entitled "Governmental Immunity." That section alleges that, *although this suit is at heart a deprivation of federal constitutional rights*, it *otherwise*:

> [F]alls squarely within the State of Texas' waiver of governmental immunity for Travis County to the extent that Rachel Jackson's death was caused by the negligent use of thioridazine, or Mellaril. The State of Texas has waived governmental immunity for lawsuits against entities such as Defendant Travis County where the basis of suit is the negligent use of tangible personal property.

Complaint at pg. 11, para. 30.  It appears that Plaintiffs have pled inconsistent and mutually exclusive causes of action. *Drain v. Galveston County*, 99 F. Supp 929, 934 (S.D. Tex. 1998) (stating that "a Plaintiff cannot pursue pendent state claims under the Texas Tort Claims Act where they are based on a single event, an event alleged under a contemporaneous §1983 cause of action to be an intentional tort."). Regardless, it is clear from looking at Plaintiffs' allegations that Mike Summers (listed in section b above) is not alleged to have actually used the Mellaril to negligently cause Rachel Jackson's death, and that the supervising sergeants and correctional officers (listed in sections c and d above) are not alleged to have actually used the Mellaril to negligently cause Rachel Jackson's death.  Moreover, there is no proof that Mike Summers, the supervising sergeants, or the correctional officers actually ever even touched the medication before it was provided to Rachel Jackson. See **Exs. D, E, and H.**  Further, there is no evidence that a pharmacist tech (who has not been identified) ever filled Rachel Jackson's prescription or handled the actual medication that was provided to Rachel Jackson.

## C. Tangible Personal Property

The Texas Tort Claims Act provides a limited waiver of sovereign immunity from suit and liability when a death[6] is caused by a "use of tangible personal or real property if the governmental unit

---

[6] Plaintiffs' claims under the Wrongful Death act must go through the Tort Claims Act waiver and must involve personal or real property. *Whipple v. Deltscheff,* 731 S.W.2d 700,  (Tex.App.--Hous. (14 Dist.) 1987).

would, *were it a private person*[7], be liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem. Code §101.021(2), §101.025.   Plaintiffs have failed to allege what piece of tangible personal property was used by each of the employees listed in paragraph 28 of their complaint.   Plaintiffs have not sufficiently alleged nor can they present any evidence that establishes a valid waiver of sovereign immunity under section 101.021(2) of the Texas Tort Claims Act (TTCA).   To establish a waiver of immunity under the TTCA, a plaintiff must affirmatively demonstrate that (1) a negligent or other culpable "condition or use" of (2) tangible personal property (3) proximately caused the plaintiff's injury; and (4) the government unit would be liable to them under Texas law if it were a private person.   *Dallas Cnty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex. 1998).   The mere fact that some property is involved is not enough to waive immunity; "using that property must have actually caused the injury."   *Tex. Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 588 (Tex. 2001); *see also San Antonio State Hosp. v. Cowan*, 128 S.W.3d 244, 246 (Tex. 2004) (holding that "section 101.021(2) waives immunity for a use of personal property only when the *governmental unit is itself the user*.").

The only mention of tangible personal property is in paragraph 30 of Plaintiffs' complaint—the negligent use of Mellaril, a medication.   However, the actions listed for each employee in paragraph 28 are actions involving the use of information, not allegations that the actual condition or use of the medication or tangible personal property by a specific employee caused Rachel Jackson's death.   See Tex. Civ. Practice & Rem. Code Section 101.021(2).   Property does not cause injury if it does no more than furnish the condition that makes the injury possible.   *Dallas Cty. MHMR v. Bossley*, 968 S.W. 3d 339, 343 (Tex. 1998);   *UTMB v. York*, 871 S.W. 2d 175, 178-179 (Tex. 1994) ("While the paper that doctors and nurses use to record information about a patients' condition is tangible … information itself is an abstract concept [and] is intangible … We hold that the State has not waived governmental immunity for negligence involving the use, misuse, or nonuse of information in a patient's medical records."); *see also Gonzales v. City of El Paso*, 978 S.W. 2d 619, 623 (Tex. App.—El Paso 1998, no

---

[7] This reference to a private person is the basis for the case law holding that a governmental entity is protected by the qualified immunity of its employee.  *See DeWitt v. Harris County*, 904 S.W. 650 (1995).

pet)(to state a claim under the Tort Claims Act, a plaintiff must allege that the property was used or misused *by a governmental employee*).

Except in limited circumstances, a governmental unit's act of furnishing or providing tangible personal property to a person for her use is not considered a "use" of tangible personal property by the governmental unit that waives immunity under the TTCA. *Tex. Sch. for Blind & Visually Impaired v. Dugosh*, No. 03-07-00681-CV, 2010 WL 1170223, 9–11 (Tex. App.—Austin Mar. 26, 2010, pet. denied) (mem op.); *see also Cowan*, 128 S.W.3d at 246 (holding that a governmental unit does not "use" property merely by allowing someone else to use it and nothing more); *Dallas Cnty. v. Posey*, 290 S.W.3d 869, 871 (Tex. 2009) (per curiam) (same).[8]  Moreover, sovereign immunity is not waived under either the "condition" or "use" prong of section 101.021(2) of the TTCA where a governmental unit has provided or furnished tangible personal property to an individual for her use, and the plaintiff did not allege that (1) the provided property lacked an "integral safety component" and that (2) the lack of this integral safety component caused the plaintiff's injuries. *Dugosh*, 2010 WL 1170223 at 15.  Consequently, a governmental unit's act of providing or furnishing tangible personal property to an individual for her use is generally not considered a "use" of tangible personal property that waives immunity under the TTCA.

In *Dugosh*, a severely handicapped young man suffocated after eating food that was prepared by and put on his plate and spoon by county employees. *Id*. at 11.  Relying on the Texas Supreme Court's decisions in *Cowan* and *Posey*, the Austin Court of Appeals held that the sovereign immunity had not been waived because the decedent's death was caused by his use of the property—eating the food—and not the school's use (preparing the food and putting the food on the decedent's plate and spoon). *Id*. at 11-12.  Although the decedent was "highly if not totally dependent upon [county employees] for the food that he ate," the *Dugosh* court held that the Texas Supreme Court's decisions in *Cowan* and *Posey* were

---

[8] Although *Dugosh* is a memorandum opinion, this case should be treated as binding authority because it is from the Austin Court of Appeals, which is the Texas Court of Appeals that would be binding if this case had been filed in (or is remanded to) state court, and it was decided after January 1, 2003. *See* Tex. R. App. P. 47.7(b) (stating that a memorandum or unpublished Court of Appeals civil case that is issued on or after January 1, 2003 has precedential value).

indistinguishable from the present case because the decedents in those cases were vulnerable to suicidal impulses.  *Id*. at 12.[9]

      *Dugosh* is analogous to the present case because in both cases, plaintiffs passed away after ingesting tangible personal property that was provided to them by governmental employees.  In *Dugosh*, the decedent "put the food to its intended use by eating it."  *Id*. at 11.  Here, Ms. Jackson put the medication to its intended use by ingesting the pills.  In addition, both decedents were vulnerable and highly dependent on the governmental unit and its staff.  The decedent in *Dugosh* was severely handicapped and dependent on the staff for the food that he ate, and his impairments reduced his capacity to ascertain the risk of eating the food he was given.  *Id*. at 12.  Here, Ms. Jackson was vulnerable to mental illness and was dependent on the prison and its staff for her medical care.  Accordingly, Travis County did not "use" tangible personal property within the meaning of the TTCA because Ms. Jackson's death resulted from her use of tangible personal property—taking and ingesting medicine—and not from the county employees' use (filling Ms. Jackson's prescription and distributing the medicine to her).  *See Miller*, 51 S.W.3d at 588 (holding that the fact that some property is merely involved is not enough to waive immunity; "[u]sing that property must have actually caused the injury.").

      Although sovereign immunity is waived when a *governmental unit*[10] has provided property that lacks an "integral safety component" and the lack of this "safety component" caused the plaintiff's injuries, *Cowan*, 128 S.W.3d at 246, this exception is inapplicable to this case because it was not pled and because the actual medication was not defective.  The integral safety component exception is derived from early Texas Supreme Court cases that held that the governmental unit's negligence in providing

---

[9] In *Cowan*, the court held that the plaintiff did not establish a "use" of property when a mental hospital patient hung himself with suspenders and a walker that the hospital had returned to him.  128 S.W.3d at 246.  In *Posey*, the court held that the plaintiff did not establish a "use" of property when an inmate hung himself with a ligature that was created from a frayed telephone receiver cord that was furnished in his cell.  290 S.W.3d at 871.

[10] To the extent that the Court does decide that the medication lacked an intregal safety component, it was definitely not because *Travis County, as a governmental unit*, did not provide EKG machines or the ability to perform blood draws.  Dr. Ford (not a Travis County employee) made the decision not to use these resources based on his professional training, experience, and prior use of Mellaril after weighing the risks and the benefits. Ex. I at p. 117 and Ex. D at pp. 55-58.

*defective or deficient protective equipment* was a "condition or use" of tangible personal property.[11]  *See Overton Memorial Hospital v. McGuire*, 518 S.W.2d 528, 529 (Tex.1975) (hospital's provision of a bed that lacked rails); *Lowe v. Tex. Tech Univ.*, 540 S.W.2d 297, 300 (Tex. 1976) (university's provision of a uniform that lacked a knee brace for the player's injured knee); *Robinson v. Cent. Tex. MHMR Ctr.*, 780 S.W.2d 169, 171 (Tex. 1989) (center's provision of swim attire lacking a life preserver to an epileptic child prone to seizures).  However, the Texas Supreme Court has repeatedly explained that *Overton*, *Lowe*, and *Robinson* represent "'the outer bounds of what we have defined as use of tangible personal property,' and [we] have applied them narrowly only when an integral safety component is entirely lacking rather than merely inadequate." *Tex. A & M Univ. v. Bishop*, 156 S.W.3d 580, 584 (Tex. 2005) (quoting *Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 585 (Tex. 1996)).

Unlike the plaintiffs in *Overton*, *Lowe*, and *Robinson*, Plaintiffs are not alleging that Travis County failed to provide a "safety component" and that the lack of that safety component was the direct cause of Ms. Jackson's injury.  Rather, Plaintiffs allege that Ms. Jackson's death was directly caused by tangible personal property—Mellaril.  To the extent that Plaintiffs are arguing that the failure to perform the manufacturer's recommended procedures (EKG and lab work) before prescribing Mellaril is a lack of an integral safety component, that argument must fail as to the Travis County employees because they were merely following a doctors' order to provide Rachel Jackson with the medication. Furthermore, Plaintiffs do not allege that Travis County provided defective or deficient protective equipment. Consequently, the "integral safety component" exception is inapplicable to this case because Plaintiffs allege that Ms. Jackson's death was caused from the medicine itself and not from the complete absence of a safety component.  In fact, the Medical Examiner testified that he classified this death as "natural" because "[i]f there was direct toxic effects of a drug that causes a death, that would be either accident or

---

[11]  Plaintiffs do not allege that there was anything defective about the actual medicine that Ms. Jackson received.  Rather, Plaintiffs allege that administering Mellaril was inappropriate given the other medications Ms. Jackson was on, her physical condition and symptoms, and the manufacturer's warning that was sent to doctors and pharmacists.  Moreover, "defect" has been defined as a shortcoming, an imperfection, *or the want of something necessary for completeness.  See* Billstrom v. Memorial Medical Center, 598 S.W. 2d 642, 646 (Tex. Civ. App.--Corpus Christi 1980, no writ); *Laman v. Big Spring State Hosp.*, 970 S.W.2d 670, 671 (Tex. App.-- Eastland 1998); *Salcedo v. El Paso Hospital District*, 659 S.W.2d 30, 32 (Tex. 1983).

suicide, depending on how the drug was consumed.  If a body has an abnormal reaction to a drug or drugs, I consider that natural." **Ex. G at p. 210**.  In Ms. Jackson's case, the cause of death was determined to be natural.  **Id**.

**D. Allegations of Failure to Act**

The allegations in paragraph 28 are really allegations that jail personnel failed to take some other or different course of action.  For example, although Plaintiffs do not mention Diana Gonzalez, the jail pharmacist, in their general negligence claims, in some of their responses to the Court, they have implied that she failed to give Rachel Jackson specific warnings regarding the medication. Under Texas law, a pharmacy is regulated depending on the pharmacy's license classification.  See Tex. Occ. Code Ann. § 560.051 (Vernon 2011) (setting forth pharmacy license classifications).  A retail pharmacy, such as Rite Aide or Eckerd, is a Class A pharmacy (community pharmacy).  "A Class A pharmacy license or community pharmacy license authorizes a pharmacy to dispense a drug or device to the public under a prescription drug order."  See Id. § 560.051(b).  In contrast, the TCSO Pharmacy is a Class C pharmacy (institutional pharmacy). **Ex. E pp. 61-62;** Tex. Occ. Code Ann. § 560.051(d). Unlike a pharmacist working in a Class A pharmacy, a pharmacist in a Class C pharmacy  is not required to provide patient counseling.[12]    More importantly, the Texas Supreme Court has held that a failure to act[13] does not fall under the waiver of immunity of the TTCA.  *Kassen v. Hatley*, 887 S.W.2d 4, 14 (Tex. 1994).  As such, these allegations do not allege the use of property by a county employee and as such do not effect a waiver of sovereign immunity.  Similarly, the mere failure to act by a Corrections Officer or Supervisor will not waive immunity.

**E.  Medical Negligence Allegations Analyzed under the Texas Tort Claims Act**

---

[12] Compare Tex. Admin. Code. § 291.33(c)(1)(A) (2010) (Texas State Board of Pharmacy, Community Pharmacy (Class A) Operational Standards) (stating that "a pharmacist shall communicate to the patient or the patient's agent, information about the prescription drug or device which in the exercise of the pharmacist's professional judgment the pharmacist deems significant") with Tex. Admin. Code. § 291.74 (2011) (Texas State Board of Pharmacy, Institutional Pharmacy (Class C) Operation Standards) (not including patient counseling as an operation standard for a Class C pharmacy); Id., § 291.73(d)(2) (not including patient counseling as a duty of a pharmacist in a Class C pharmacy).

[13] For example, although Plaintiffs do not mention Diana Gonzalez in their general negligence claims, in some of their responses to the Court, they have implied that she failed to give Rachel Jackson specific warnings regarding the medication.

Although Plaintiffs' medical negligence claims should be dismissed due to sovereign immunity, which is retained by Tex. Civ. Prac. & Rem. Code Sec. 74.003, Defendant Travis County will analyze those claims as if pled under the TTCA. The actions listed by the TCSO "healthcare providers"[14] in paragraph 25 of their Complaint must fit within the limited waiver of sovereign immunity set out by the TTCA.  Diana Gonzalez, the jail pharmacist who filled Rachel Jackson's prescription, did not distribute defective Mellaril or use the Mellaril in such away that caused Rachel Jackson's death.  When asked at her deposition, Gonzalez agreed that she regularly sees physicians prescribe more than one antipsychotic at a time.  **Ex. E, p. 119, lns 9-16.**  She also testified that she did not recall ever seeing the black box warning letter before the incident (which would be information, not personal property).  **Ex. E, p. 50.** She also testified that based on her education, training and experience, she made an educated assumption that Dr. Ford, a board certified psychiatrist, was aware of the issues surrounding the medication that he was prescribing.  **Ex. E, pp. 56, 62-64.**  In sworn deposition testimony, Ms. Gonzalez indicated that she wasn't engaged in the pre-prescription issues and that she assumed that the labs and EKG were an aspect of Rachel Jackson's care that her direct providers were handling. **Ex. E, pp. 86-87.**  Gonzalez testified that when she entered the prescription into the pharmacy computer she did not get a level 1 absolute contraindication warning when she filled Jackson's prescription, which would put a hard stop on dispensing the medication.  Instead, she got a level 2 warning which does not prohibit dispensing the medication.  **Ex. E, pp. 134-135.**  It was her testimony that a physician can choose to prescribe medications that are contraindicated if he determines that the benefits outweigh the risk.  **Ex. E, p. 133.** Doctor Ford was not prescribing large doses and Gonzalez assumed that Dr. Ford had weighed the benefits and the risks of prescribing this medication for Rachel Jackson. **Ex. E, p. 121-122.**  In fact, Gonzalez was correct that Dr. Ford had indeed weighed the risks and benefits, and used his experience with Mellaril to guide his decision to prescribe it on this occasion. **Ex. A-3 at 2450050.**

---

[14] "Healthcare providers" is the wording used in Plaintiffs' complaint, and should not be construed as an admission or agreement by Travis County as to the proper application of the term.

Plaintiffs last two medical negligence claims are against unidentified TCSO nurses who "administered thioridazine" and who "did not evaluate Rachel Jackson's conditions and complaints." **Comp. at p. 9**.   Clearly, as argued above, a failure to act is not enough to pierce immunity and the medication was provided to Rachel Jackson for *her* use.  See argument supra.  Moreover, there was nothing defective about the medication, the problem as identified by Dr. Dolinak, Plaintiffs only causation expert, was the way in which Rachel Jackson's body reacted to the medicine. Another person taking the same medicine may have had no adverse reaction to it at all. **Ex. G at p. 210**.

**F. Travis County's Employees are Entitled to Official Immunity, and Travis County has Derivative Sovereign Immunity as a Result**

Even if the Court decides that Plaintiffs have sufficiently alleged the use, misuse, or condition, of tangible personal property by a Travis County employee caused Rachel Jackson's death, they would still be barred from suing or from recovering against Travis County because of the qualified immunity of its employees.  *DeWitt v. Harris County*, 904 S.W. 2d 650 (1995); *City of Beverly Hills v. Guevara*, 911 S.W. 2d 901 (Tex. App.—Waco 1995, no writ).  Once the elements establishing official/qualified immunity have been  asserted, it is the Plaintiffs' burden to provide evidence that the employee is NOT entitled to the immunity.  See *City of Lancaster v. Chambers*, 883 S.W.2d 650 (Tex. 1994). Travis County asserted its right to sovereign immunity through its employees official/qualified immunity in its Answer to the Plaintiffs' Complaint. [Dkt. 6 pg. 19, para. 12]   The individual employees accused of negligence are entitled to official/qualified immunity, and Plaintiffs have no evidence that any employee acted in a way in which he would not be entitled to such immunity.   Under Texas Law, A governmental employee is entitled to official immunity for (1) the performance of discretionary duties (2) that are within the scope of the employee's authority, (3) provided that the employee acts in good faith.  *City of Lancaster v. Chambers*, 883 S.W.2d 650 (Tex. 1994).   The depositions of Diana Gonzalez and Arnie Waden demonstrate that they are entitled to official/qualified immunity. **Exs. E at pp. 132-133, and C at p. 105.** Similarly, the affidavit of Alero Walker demonstrates that she is entitled to official /qualified immunity.

**Ex. H.**  Because they are entitled to official immunity, they are not liable as private persons.  Because the

Tort Claims Act provides that a governmental unit is liable to the extent a private person would be liable, the official/qualified immunity of Travis County's employees triggers Travis County's sovereign immunity. *DeWitt v. Harris County*, 904 S.W. 2d 650 (1995).

**G. Plaintiffs' Allegations of Intentional Actions by Travis County Employees are Excluded from the Waiver of Immunity Under the Texas Tort Claims Act**

Despite pleading both medical negligence and negligence claims against Travis County (**Comp. at pp 9-10**), in their response to Travis County's Motion to Dismiss Pursuant to Rule 12(c), they state:

> To the extent that the Court concludes Plaintiffs alleged negligence, and in support of their Section 1983 claim have pled acts that the Court may feel are better characterized as negligence, **there should nevertheless be no confusion as to the essential nature of Plaintiffs' complaint: alleging the deprivation of Rachel Jackson's constitutional rights.**

**[Dkt. 39 at p. 15, paragraph 27]** (emphasis added). Plaintiffs also allege in their response that "Travis County agents and employees denied Rachel Jackson medical care because they **deliberately chose** not to perform tests that were recommended to prevent death before administering thioridizine." (emphasis added) **[Dkt. 39 at p. 13, paragraph 23]**. In addition, they state "a review of Plaintiff's complaint reveals that Plaintiffs do not complain of a doctor's improper care, or of an incorrect diagnosis. Plaintiffs' petition complains of something more alarming: the repeated **deliberate disregard** of serious medical needs …" **[Dkt. 39 at p. 17, paragraph 31]** (emphasis added). These statements of deliberate *intentional* actions are judicial admissions and negate their claims of negligence. Intentional torts are excluded from the waiver of immunity under the Texas Tort Claims Act. See Tex. Civ. Prac. & Rem. Code Section 101.057.

## VI. <u>PRAYER</u>

**WHEREFORE**, Defendant Travis County prays that its Motion for Summary Judgment be granted and that Plaintiffs' claims be dismissed with prejudice. Defendant Travis County further requests any and all relief, at law or in equity to which it may be justly entitled.

Respectfully submitted,

**DAVID ESCAMILLA**

TRAVIS COUNTY ATTORNEY
P. O. Box 1748
Austin, Texas 78767
(512) 854-9415
FAX:  (512) 854-4808

By:      **/s/ Elaine A. Casas**

ELAINE A. CASAS
Assistant County Attorney
State Bar No. 00785750

JENNIFER KRABER
Assistant County Attorney
State Bar No. 24027426

**ATTORNEYS FOR DEFENDANT**
**TRAVIS COUNTY, TEXAS**

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of October, 2011, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Elaine A. Casas
P.O. Box 1748
Austin, Texas 78767
**Attorney for Defendant Travis County**

Jennifer Kraber
P.O. Box 1748
Austin, Texas  78767
**Attorney for Defendant Travis County**

Paul Byron Starr
301 Congress Avenue, Ste. 1700
Austin, Texas 78701
**Attorney for Co-Defendant Dr. Ford**

Plaintiffs Regina Jackson & Rudolf Williamson
c/o Sean M. Lyons, Attorney and Scott Hendler, Attorney
Henderlaw, P.C.
1301 West 25th Street, Suite 400
Austin, Texas 78705
**Attorneys for Plaintiffs**

/s/ Elaine A. Casas
Elaine A. Casas
Jennifer Kraber
Assistant County Attorneys

258823-1                                    26

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **REGINA JACKSON AND RUDOLF** | § | |
| **WILLIAMSON, INDIVIDUALLY, AND** | § | |
| **ON BEHALF OF THE ESTATE OF** | § | |
| *Plaintiffs,* | § | |
| | § | **CIVIL ACTION NO. A-10-CA-522-SS** |
| **vs.** | § | |
| | § | |
| **JOHN S. FORD, M.D., and** | § | |
| **TRAVIS COUNTY, TEXAS** | § | |
| *Defendants.* | § | |

## ORDER GRANTING DEFENDANT TRAVIS COUNTY'S
## MOTION FOR SUMMARY JUDGMENT

On this date came on to be considered Defendant Travis County's Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56.  After careful consideration, the Court is of the opinion that the Motion has merit and should be GRANTED.  Accordingly, it is

ORDERED, ADJUDGED and DECREED that Defendant Travis County's Motion for Summary Judgment is GRANTED, and that Plaintiff's Complaint against Defendant Travis County is hereby dismissed with prejudice.

SIGNED this _____day of _____ 2011.


_____
UNITED STATES DISTRICT JUDGE