

JAMES N. SYLVESTER
Chief Deputy

**GREG HAMILTON**
TRAVIS COUNTY SHERIFF
P.O. Box 1748
Austin, Texas 78767
(512) 854-9770
www.tcsheriff.org

SCOTT BURROUGHS
Major – Law Enforcement

DARREN LONG
Major – Corrections

MARK SAWA
Major - Administration & Support

January 08, 2009

**TO:**       Thomas Lynch 4229, Corrections Officer

**FROM:**   Thomas Kluz 483, Lieutenant

**SUBJECT:**  Written Reprimand
   **RE:**     Formal Head Count Procedures

This constitutes a written reprimand for your failure to properly follow written policy on conducting formal head counts on July 21, 2008.

While a reprimand is not a severe form of disciplinary action, it is not intended to diminish the significance of the misconduct. The mildness of this punishment as compared to your error in judgment is intended to indicate our confidence that you will change this pattern of behavior and remain a professional employee.

This action is in accordance with the Travis County Sheriff's Office Civil Service Regulations. 5.07. Disciplinary Actions, as all Corrections Bureau Captains are considered the designee for the Chief Deputy in these matters.

I HAVE PERSONALLY MET WITH LIEUTENANT KLUZ AND DISCUSSED THIS MATTER. I HAVE READ AND UNDERSTAND THE TERMS OF THIS ACTION INCLUDING THE APPEAL PROCESS.

_____, Corrections Officer      ____1/9/09_____ Date
Thomas Lynch 4229

I HAVE PERSONALLY MET WITH AND EXPLAINED THE TERMS OF THIS ACTION TO CORRECTIONS OFFICER THOMAS LYNCH.

_____ 483 , Lieutenant      ___1-9-09_____ Date
Thomas Kluz 483



2450035
EXHIBIT A-3



JAMES N. SYLVESTER
Chief Deputy

**GREG HAMILTON**
TRAVIS COUNTY SHERIFF
P.O. Box 1748
Austin, Texas 78767
(512) 854-9770
www.tcsheriff.org

PHYLLIS CLAIR
Major – Law Enforcement

DARREN LONG
Major – Corrections

MARK SAWA
Major - Administration & Support

January 7, 2009

**TO:**      Darren Long 832, Major

**FROM:**   Lisa Brown 747, Captain

**SUBJECT:**  IA case #2008-049 Thomas Lynch 4229, Corrections Officer
   **RE:**   Disciplinary Recommendation

I have reviewed the IA Case on Officer Thomas Lynch conducted by Deputy Marburger and agree with his findings. I have met with Lynch and he has admitted that his actions were wrong. He has assured me that this was an isolated incident and will not happen again. He is aware that this incident compromised his integrity and credibility as a Corrections Officer.

Officer Lynch has been employed with the Sheriff's Office since June of 2007 and has consistently received meets or exceeds standards ratings on his performance appraisals.

Therefore, I concur with Sergeant Holmes' recommendation that Officer Thomas Lynch be issued a written reprimand.

*I concur with RR*
*Maj. D. Long*
*1-7-09*

xc:    Thomas Lynch, Officer
   Gwendolyn Holmes, Sergeant
   Lisa Glatt, Lieutenant
   Shane Poole, Lieutenant

*Safety, Integrity, Tradition of Service*



JAMES N. SYLVESTER
Chief Deputy

**GREG HAMILTON**
TRAVIS COUNTY SHERIFF
P.O. Box 1748
Austin, Texas 78767
(512) 854-9770
www.tcsheriff.org

SCOTT BURROUGHS
Major – Law Enforcement

DARREN LONG
Major – Corrections

MARK SAWA
Major - Administration & Support

December 9, 2008

**TO:**       Darren Long 832, Major

**FROM:**   Lisa Brown 747, Captain

**SUBJECT:**   IA Case #2008-049 Death in Custody Rachelle Jackson

I have reviewed the Internal Affairs investigation on Inmate Rachelle Jackson - Death in Custody
and agree with Investigator Marburger's findings.   It is clear that Corrections Office Vicki
Donnelly violated county policy and procedure.  She is no longer employed with Travis County
and should not be considered for re-hire.

2450038
EXHIBIT A-3



JAMES N. SYLVESTER
Chief Deputy

**GREG HAMILTON**
TRAVIS COUNTY SHERIFF
P.O. Box 1748
Austin, Texas 78767
(512) 854-9770
www.tcsheriff.org

SCOTT BURROUGHS
Major – Law Enforcement

DARREN LONG
Major – Corrections

MARK SAWA
Major - Administration & Support

November 30, 2008

TO:           Captain L. Brown #747

FROM:         Lieutenant L. Glatt #488

SUBJECT:      IA CASE #2008-49

I have reviewed IA Case #2008-49. I concur with Investigator Marburger's sustained findings against Officer V. Donnelly #4292 for violation of TCSO Policy 3.1.2 – Staff Interaction with Inmates.

Officer Donnelly had received proper training on conducting Post Visuals and Meal Service. Less than one month prior to this incident, 5 minute FTO training was conducted on both of these topics. Officer Donnelly was present for these trainings.

Vicki Donnelly is no longer employed with the Travis County Sheriff's Office. I recommend a memorandum be placed in her personnel file making her ineligible for rehire.

2450039
EXHIBIT A-3



JAMES N. SYLVESTER
Chief Deputy

**GREG HAMILTON**
TRAVIS COUNTY SHERIFF
P.O. Box 1748
Austin, Texas 78767
(512) 854-9770
www.tcsheriff.org

SCOTT BURROUGHS
Major – Law Enforcement

DARREN LONG
Major – Corrections

MARK SAWA
Major - Administration & Support

18 November 08

TO:        Lieutenant Lisa Glatt, 488

FROM:    Sergeant Gwendolyn Holmes, 419

SUBJECT: Internal Affairs Case No. 2008-49
           REF: Vicki Donnelly

I have reviewed the Internal Affairs investigation in regards to inmate Rachel Jackson's death which occurred on July 21, 2008. The investigation yielded adequate evidence to substantiate the allegations of then, Officer Vicki Donnelly's failing to adhere to TCSO policy 3.1.2 <u>Staff Interaction with Inmates</u>.
Post officers shall conduct a visual, observation of all inmates at least once hourly. This shall be accomplished by walk-through inspections (post visuals) of inmate living and work areas, by observing conditions and conversing with inmates. Observation shall be performed at least every thirty minutes in an area where inmates are known to be assaultive, potentially suicidal, mentally ill, or who have demonstrated bizarre behavior are confined. Observation shall be performed at least every fifteen minutes on all inmates who are placed on suicide watch or in a restraint device. <u>Officers must ensure that they see a living, human body when conducting these visuals.</u> Each of these post visuals shall be documented in the proper log.
It is my belief that Donnelly failed to adhere to TCSO Goals #8 <u>Ensure the</u> <u>humane and lawful treatment of all people</u> by her failure to take the appropriate actions upon finding an unresponsive inmate.

It should be noted that Donnelly resigned her position with TCSO on October 3, 2008.

Therefore, after careful review and consideration, I recommend that Donnelly not be considered for re-hire.

2450040
EXHIBIT A-3

I learned that Jackson was arrested by the Austin Police Department on July 15, 2008, for a Motion to Proceed with an Adjudication of Guilt warrant for the original charge of Delivery of a Controlled Substance. During Jackson's incarceration, she had been placed in Medical cell JMOO6 for suicide watch and then had to be placed in the restraint chair due to her banging on the wall. On July 16, 2008, Jackson was transferred to Building 3 and housed in cell 3VC2 for full suicide precautions and later the same date was moved to cell 3VC1. On July 18, 2008, Jackson was re-housed to psych lockdown cell 3J01B per Dr. John Ford.

I collected all of the documentation involving Jackson as well as the Post logs and made additional copies for Major Crimes Detective Craig Smith #978, who had been assigned to the criminal investigation. I secured Jackson's property and released it to the custody of Detective Smith. I collected all of the incident reports and provided copies to Detective Smith. The following are a synopsis of the significant reports:

**Officer Vicki Donnelly #4292** reported that at approximately 0510 hours she began serving breakfast trays in "I" unit and then moved to John unit. Donnelly reported that when she got to inmate Rachel Jackson, she opened the food chute, bent down, and yelled her name but inmate Jackson did not respond. Donnelly yelled her name a couple more times and inmate Jackson still did not move. Donnelly opened the cell door and called inmate Jackson's name again with no response. Donnelly had the tray server hold the door and she entered the room and shook inmate Jackson's leg and she did not move. Donnelly placed her hand on inmate Jackson's back and thought she felt inmate Jackson move so she exited the cell. Donnelly continued serving trays in "K" and "L" units and upon completion of serving trays, she informed Officer Segura that she did not get a verbal refusal from inmate Jackson. Officer Segura went to check on inmate Jackson and then called a medical emergency. Donnelly conducted emergency head counts and checked doors and remained on post until relieved by "A" shift officers.

**Officer Jennifer Segura #1694** reported that she assisted with the initial counts at the beginning of the shift which were conducted at 2257 hours. Segura stated that the breakfast trays arrived on post at 0508 hours and she maintained a visual of Officer Donnelly while she served the breakfast trays. Segura was able to observe Officer Donnelly go to most of the cells, open the food chute, lean over, and it appeared Officer Donnelly attempted to talk with the inmates in the cells. Segura reported that at 0542 hours Officer Donnelly came into the control room and said everyone had been served. Segura wrote in the log book and indicated a post visual was done and the units were secured. Segura reported that when she finished writing, Officer Donnelly mentioned J01B which housed inmate Rachel Jackson and said that inmate Jackson did not respond to her attempt to wake her up for breakfast. Officer Donnelly continued to explain that she went into the cell and shook inmate Jackson but she still did not respond. Segura asked Officer Donnelly if she could tell if the inmate was breathing and Officer Donnelly responded that she shook her. Segura again asked Officer Donnelly if she could tell if the inmate was breathing and Officer Donnelly said she put her hand on the back of said inmate and could feel her breathing.

2

she attempted to pull on Jackson's right arm and realized that she had some stiffness in her arm, but she didn't want to assume anything because she had experienced inmates before that were taking medications that would cause them to stiffen. She stated that she could move Jackson's arm but it was noticeable that it was starting to stiffen. Segura stated that she felt for a pulse twice on Jackson's carotid artery and could not find one and that is when she called for Medical. Segura stated that when Sergeant Holmes arrived, she had asked if they needed to do CPR and was told that Jackson was dead. She stated that CPR was not performed. I asked Segura if she believed that life saving efforts would have been useless. Segura stated, "I firmly believe any life saving efforts would have been useless". She stated that it was beyond that. Segura stated that Nurse Woody Simmons estimated that Jackson had been dead between 2 and 3 hours.

On September 17, 2008, Detective Smith contacted me and advised that he had been contacted by the Medical Examiner in reference to the pending autopsy report. Detective Smith stated that the Medical Examiner had not made a ruling as to the cause of death but he had been conducting research regarding the medications. Detective Smith stated that the Medical Examiner told him that it appeared that Jackson had suffered a cardiac arrest as a combined result of the increased chemical levels found in Jackson's body and the medications she had been taking. Detective Smith stated that he was told that the chemical levels were increased by Jackson's body but the cause was not known. Detective Smith stated that the Medical Examiner stated that he was researching the effects of the elevated levels and the addition of the medication combination and he was also consulting with other experts before he made his final decision as to the cause of death.

On October 8, 2008, Detective Smith provided me with a copy of the Medical Examiner's Report. The following is the conclusion of Chief Medical Examiner David Dolinak:

Based upon the history and autopsy findings, it is my opinion that RACHEL ANNETTE JACKSON, a 21-year old woman, died as the result of complications of treatment for schizoaffective disorder. Although no convincing anatomic cause of death could be identified, the decedent began treatment with the combination of thioridazine, risperdone, and aripiprazole, each of which may increase the QTc interval. Six days before her death (7/15/08), she had documented mild electrolyte abnormalities, including hypokalemia. Four days before her death (7/17/08), she complained of rapid heart rate. It is most likely that in the setting of hypokalemia, the combination of antipsychotic medications led to a fatal dysrhythmia. As all three of the medications may rarely cause a seizure, it is also possible that she may have had a fatal seizure.

The manner of death was ruled as **Natural.**

Based upon the Medical Examiner's findings pertaining to the combination of medications, it was decided to continue the investigation and review the medical procedures.

While reviewing the medical documentation, it was learned that prior to being transported to Travis County Central Booking, Jackson was transported to Brackenridge Hospital and treated for ingestion of PCP. After arriving at Central Booking on July 15, 2008, Jackson was assessed

8

by the medical staff. Based on Jackson's behavior and the medical findings, Dr. Ford was contacted and he ordered that Abilify 9.75 IM be given at that time. Dr. Ford later requested Jackson's past medical records and prescribed Abilify 20mg and Risperdal 4mg for her and had her moved to psych lockdown. Documentation shows that Jackson continued to exhibit acts of aggression and she had spit in an officer's face. On July 18, 2008, Dr. Ford prescribed Mellaril for Jackson.

On October 20, 2008, I contacted Pharmacist Diana Gonzalez #4238 at the Travis County Correctional Complex and scheduled an interview for October 24, 2008. The interview is regarding the dispensing of medications.

On October 24, 2008, I met with Pharmacist Diana Gonzalez at the Correctional Complex Health Services Building for her scheduled interview. After providing Gonzalez with the Garrity Warning, the following was learned in a sworn, digitally recorded interview:

> **Diana Gonzalez** stated that she is a licensed Pharmacist and has been employed with the Sheriff's Office since July 2007. I read the conclusion of the Medical Examiner's report regarding the autopsy of Rachel Jackson to Gonzalez and asked if she was aware of any interactions with the combination of drugs given to Jackson. Gonzalez stated that when they processed the prescription, the software that they use in the pharmacy showed a level 2 drug-drug interaction notice with Thioridazine (Mellaril) and Risperdal, meaning that the two drugs combined together could create an additive effect of the Mellaril which is known to have a prolongation of the QT interval in addition to Risperdal that can also have the same effect. She stated that although the two drugs could be taken together, there was an increased risk. Gonzalez stated that on July 15, they filled the prescriptions for the Risperdal and the Abilify and then on July 18, they filled the Mellaril. She stated that when the Mellaril was entered into the computer system, the system showed that it was a severity level 2 drug combination with the Risperdal. Gonzalez stated that the level 2 notices do not require any special actions but a level 1 interaction notice will cause a hard stop on filling the prescription and require a Pharmacist's security code to continue processing.
>
> Gonzalez stated that at this current time, the pharmacy was only notifying the prescribing physician of the level 1 interaction notices. She stated that the Level 2 interaction notices were not maintained and she did not have the actual notice that appeared while they were processing Jackson's prescription. She stated that after she had learned of the possible cause of death, she re-entered the Risperdal and Mellaril into the system on October 10, 2008, to see if the system would notate the level 2 interactions. Gonzalez stated that the system did show the level 2 interaction. Gonzalez stated that she had printed out the notice and placed it in Jackson's file. Copies of Jackson's medication profile and the level 2 notice were placed in the case file.
>
> After the interview Gonzalez stated that not all pharmacies used the same software to process prescriptions. She identified the software that the Travis County pharmacy uses as New Tech, and stated that it was a pharmacy database. Gonzalez stated that she contacted a friend who is a pharmacy tech employed with Wal-Mart. Gonzalez stated

2450049
EXHIBIT A-3

that she knew Wal-Mart used a different software, so she had the same medications entered into their system and it did not show a severity level interaction for the Mellaril and Risperdal.

Later this date, I met with Dr. John Ford for an unscheduled interview. After providing Dr. Ford with the Garrity Warning, the following was learned in a sworn, digitally recorded interview:

**Dr. John Ford** advised that it had been a few months since he last reviewed the medical file for Rachel Jackson and he would not be able to provide accurate information specifically related to her treatment. I asked Dr. Ford if he were given the opportunity to review the file, would he be able to answer the questions. Dr. Ford acknowledged that he would be. The interview was rescheduled for October 27, 2008, to allow Dr. Ford to review the medical file.

On October 27, 2008, I traveled to the Travis County Correctional Complex and again met with Dr. John Ford. I advised Dr. Ford that he was still being afforded the Garrity protection. The following was learned in a sworn, digitally recorded interview:

**Dr. John Ford** advised that after reviewing the medical records for Rachel Jackson he found that she had remained agitated and difficult to manage even though she had received Abilify and Risperdal prior to and during her incarceration and even during her previous incarceration. Dr. Ford stated that he prescribed the Mellaril to help her sleep and to quiet her down from her repeated episodes of difficulty. Dr. Ford identified Abilify and Risperdal as being medications that are specifically used in the treatment of schizophrenia and similar manifestations attributed to mental illness. He stated that the difference between those two drugs and Mellaril is that Mellaril has much more of a sedating quality.

I read a portion of a Food and Drug Administration warning that was submitted July 7, 2000, that read, *"Mellaril is now indicated only for schizophrenic patients who fail to show an acceptable response to adequate courses of treatment with other antipsychotic drugs, either because of insufficient effectiveness or the inability to achieve an effective dose due to intolerable adverse effects."* Dr. Ford stated that the Abilify and the Risperdal were not achieving homeostasis and that was a deciding factor in prescribing the Mellaril. Dr. Ford stated that it was his belief that the benefits of the Mellaril outweighed the risks. He stated that Mellaril has been in use for more than fifty years and has a well known record of calming people without adverse effects. He stated that the dosage used was 1/8 of the maximum dose recommended. He stated that the medication had the added advantage of not causing any gastrointestinal distress or discomfort. Dr. Ford stated this was a treatment that he very commonly prescribes and he has never had a death from prescribing Mellaril. Dr. Ford stated that he did not know of a specific death that occurred from Mellaril but it was clear that if you could prolong the QTc for a great enough degree, than it was possible for such to happen.

Dr. Ford stated that he read the Medical Examiner's report and found that Jackson had an 8cm by 6cm arachnoid cyst that had displaced the tissue in the left temporal lobe. He

10

compared the size of the cyst to the size of a baseball. Dr. Ford stated that given the size of the cyst, one would think that there would be a tremendous increase in intracranial pressure. Dr. Ford stated, "you have to squeeze a baseball size amount of brain into nothingness in order for this tumor to exist". He stated that this almost always raises intracranial pressure which is well known to cause sudden death by a variety of mechanisms including the cessation of breathing. He stated that the Medical Examiner also found some abnormalities in her lungs that might be of interest. Dr. Ford acknowledged that the abnormalities in the lungs would be consistent with the cessation of breathing.

Dr. Ford stated that the symptoms, such as the rapid heart rate that Jackson experienced, occurred during the weekend. He stated that although he was available for calls at home, he would not have been contacted for that problem due to it being a medical call and not a psychiatric call.

**Investigator's Comments:**

Inmate Rachel Jackson was found unresponsive inside her cell at the Travis County Correctional Complex Building 3 during the serving of breakfast. The post log reflected post visuals were being conducted within a timely manner. Travis County Sheriff's policy provides that while conducting visuals of inmates, officers must ensure that they see "a living, human body".

Officer Donnelly was responsible for conducting the post visuals but was not able to determine if Jackson was breathing and admitted that she did not look for the rise and fall of the chest. Donnelly stated that she did her visuals the same way her FTO did and stated, "you count bodies in the bed". Donnelly stated that Jackson seemed to be asleep and recalled that she was lying in her bunk on her stomach and was completely covered with a blanket and she could not see her face.

When Donnelly was at Jackson's cell to serve breakfast she called out her name several times but Jackson didn't move so she went into the cell and shook Jackson's leg and again she didn't move. Donnelly stated that she put her hand on Jackson's mid back and she felt her move like she had taken a breath. Donnelly stated that she thought Jackson was heavily medicated and didn't think anything was wrong.

Jackson began receiving treatment by Travis County Psychiatrist Dr. John Ford for a schizoaffective disorder on the first day of her incarceration. Dr. Ford prescribed Abilify and Risperdal that Jackson was known to have previously taken. Due to Jackson's continued acts of aggression and agitation, Dr. Ford prescribed Mellaril on July 18, 2008, and stated that the Abilify and the Risperdal were not achieving homeostasis and Mellaril has a well known record of calming people without adverse effects. Dr. Ford believed that the benefits of the Mellaril outweighed the risks and the dosage used was 1/8 of the maximum dose recommended. Dr. Ford commonly prescribes the treatment he had ordered for Jackson and has never had a death from prescribing Mellaril, but it was clear that if you could prolong the QTc for a great enough degree, than it was possible for such to happen. Pharmacist Diana Gonzalez explained that when filling

11

2450051
EXHIBIT A-3



# TRAVIS COUNTY SHERIFF'S OFFICE
## INMATE INCIDENT REPORT

INSTRUCTIONS: Fill in all spaces provided. If not applicable, show N/A

Rev. 05/04/06

| INMATE NAME: | JACKSON, RACHEL | | BKG#: | 33294 | HOUSING: | JMOO6 |
|---|---|---|---|---|---|---|

| INCIDENT(S) REPORTED: | 1) THREATENING | | X MAJOR | MINOR |
|---|---|---|---|---|
| | 2) PROPELLING SUBSTANCES (SPITTING) | | X MAJOR | MINOR |
| | 3) | | MAJOR | MINOR |
| | 4) | | MAJOR | MINOR |

LOCATION OF INCIDENT: JMOO6    ADDRESS: 500 WEST 10TH AUSTIN TEXAS

DATE OF INCIDENT: 15 JULY 2008    TIME OF INCIDENT: 1941    DATE/TIME OF REPORT: 07/15/08 2120

ADDITIONAL INMATES INVOLVED (Give NAME, BKG# and UNIT):
1) _____ 2) _____
3) _____ 4) _____

OFFICER(S) INVOLVED: (Name & Emp#): T. GARCIA #1052    P. KNIGHT #1936

REPORTING OFFICER (Name & Emp#): T. GARCIA #1052

DUTY TELEPHONE #: 854-9025    SHIFT: ____    TIME: ____ DAYS OFF: ____ VARIOUS

(CHRONOLOGICAL LISTS OF EVENTS)    **SYNOPSIS OF INCIDENT**    (WHO, WHAT, WHEN, WHERE, WHY, HOW)

At approximately 1805 inmate

Jackson, Rachel
B/F  DOB 2/2/87
BKG#0833294

began banging on the window of her cell (JMOO6) with her fist. She was yelling and cussing wanting to use the telephone. She had been placed on suicide watch at approximately 1330. She continued to bang and began threatening me saying if I came in the room she would kick my ass. I instructed her to discontinue banging and she complied.

At approximately 1825 she starting banging on the window with the elbow of her right arm. She again started yelling and cussing and threatening. At 1830 she began kicking the cell door and refused verbal instruction to stop. She was then placed in the Restraint Chair at approximately 1845.

At approximately 1930 she was able to remove her right foot form the restraints. I entered the cell and secured her foot. At approximately 1941 she again was able to remove her right foot from the restraints. Myself and Officer Knight #1936 entered the cell and prepared to restrain her feet with leg cuffs. Upon entering the cell the inmate began to yell saying if we touched her she would kick our asses. She then attempted to kick me with her right leg.

| | X | CONTINUED ON NEXT PAGE |
|---|---|---|

**SHIFT SUPERVISOR'S RECOMMENDATION:**

| No Action Taken: | | Reprimand Issued: | | Waiver Offered: | X | Disciplinary Board Hearing: | X |
|---|---|---|---|---|---|---|---|
| Refer To: | Disciplinary Bd | | | | | Other: | |

COMMENTS:

DATE: 071608    TIME OF REVIEW: 0445

Sgt L. Hutchinson #964
Shift Supervisor's Signature & Emp.#

**CAPTAIN'S/DIRECTOR/DESIGNEE ACTION TAKEN:**

| No Action Taken: | | Reprimand Issued: | | Waiver Offered: | | Disciplinary Board Hearing: | |
|---|---|---|---|---|---|---|---|
| Refer To: | | | | | | Other: | |

COMMENTS:

DATE: _____    TIME OF REVIEW: _____

Signature & Emp.#

Designate Copy (Circle): 1  Original  2  Post Record  3  Classification  4  Other (specify)

## TRAVIS COUNTY SHERIFF'S OFFICE
## INMATE INCIDENT SUPPLEMENTAL REPORT FORM

INSTRUCTIONS: Fill in all spaces provided.  If not applicable, show N/A                              Rev. 05/04/06

| INMATE NAME: | JACKSON, RACHEL | | BKG#: | 33294 | HOUSING: | JMQOO6 |

| INCIDENT(S) REPORTED: | ) THREATENING | | X MAJOR | MINOR |
| | 2) PROPELLING SUBSTANCES (SPITTING) | | X MAJOR | MINOR |
| | 3) | | MAJOR | MINOR |
| | 4) | | MAJOR | MINOR |

LOCATION OF INCIDENT:  TCJ MEDICAL POST          ADDRESS: 500 WEST 10TH AUSTIN TEXAS

REPORTING OFFICER (Name & Emply#):    T. GARCIA  #1052

DATE OF INCIDENT:    15 JULY 2008    TIME OF INCIDENT:    1941    DATE/TIME OF REPORT:    7/15/08 2100

[X]    **CONTINUATION**  (TO INCIDENT REPORT)    (Pages added as numbered) PAGE  2  OF  2  PAGES

I instructed her to place her leg on the floor and she refused.  She then became resistive and we had to use force in order to secure her leg.  Once I finished securing her left leg I stood up and she spit in my face.

She then began thrashing her body in upward motion in an attempt to free herself.  So we could finish checking the restrains, I placed by hand on her shoulders to keep her in a seated position.  She than began shaking her head back and forth in what I perceived as an attempt to bite me.  I than placed my hand under her chin and moved her head to an upward position.  The restraints were secured and we existed the cell.

| T. GARCIA #1052 | Sgt L. Hutchinson #964 |
| Reporting Officer's Name & Employee # | Reviewing Supervisor's Name & Employee # |

**Designate Copy (Circle):** [1] Original  [2] Post Record  [3] Classification  [4] Other (specify): _____

# TRAVIS COUNTY SHERIFF'S OFFICE
## DISCIPLINARY HEARING WAIVER AND ACKNOWLEDGEMENT

Rev. 05/04/00

**INSTRUCTIONS:** Fill in all spaces provided. If not applicable, show N/A

| INMATE NAME: | JACKSON, RACHEL | | BKG#: | 33294 | HOUSING: | JMO06 |
|---|---|---|---|---|---|---|

| DATE OF INCIDENT: | 15 JULY 2008 | TIME OF INCIDENT: | 1941 | HOUSING AT TIME OF INCIDENT: | JMO06 |
|---|---|---|---|---|---|

You have been charged with the following rule violation(s):

| 1) | THREATENING | | | [X] MAJOR | [ ] MINOR | [ ] HABITUAL |
|---|---|---|---|---|---|---|
| 2) | PROPELLING SUBSTANCES (SPITTING) | | | [X] MAJOR | [ ] MINOR | [ ] HABITUAL |
| 3) | | | | [ ] MAJOR | [ ] MINOR | [ ] HABITUAL |
| 4) | | | | [ ] MAJOR | [ ] MINOR | [ ] HABITUAL |

[ ] **FACILITY PROBATION REVOKED:**  Date Imposed:

Facility Probation Information:

You are scheduled to appear at a Disciplinary Hearing on _____ for the above stated violation(s). If you are subsequently found guilty of one or more of those violations at the Disciplinary Hearing, the following sanctions may be imposed:

| **Major Violation** | **Minor Violations** |
|---|---|
| X Facility probation (can be imposed for duration of stay) | X Facility probation for not more than 60 days |
| X Loss of any or all privileges for not more than 30 days | X Loss of any or all privileges for not more than 15 days |
| X Loss of correspondence privileges (general correspondence only) if the violation involved correspondence rules, for not more than 30 days. | X Loss of correspondence privileges (general correspondence only) if the violation involved correspondence rules, for not more than 15 days. |
| X Removal from programs for up to duration of stay | X Removal from programs for up to 15 days. |
| X Disciplinary separation for not more than 30 days. | X Disciplinary separation for not more than 15 days. |
| X Filing of formal Criminal charges | X Filing of formal Criminal charges |
| X Loss of Inmate worker status for up to duration of stay | |

You are hereby notified that you may waive your right to the Disciplinary Hearing. You are being afforded the opportunity to waive your right to the Disciplinary Hearing and accept the following sanctions listed below:

### DISCIPLINARY SANCTIONS BY WAIVER

| Lockdown | xx | L From Date | 071508 | L Days | 15 | L To Date | 072908 |
|---|---|---|---|---|---|---|---|
| | | L Start Time | | | | L End Time: | |
| Phone | xx | P From Date | 071508 | P Days | 15 | P To Date | 072908 |
| Rem Program | xx | R From Date | 071508 | R Days | 15 | R To Date | 072908 |
| Commissary | xx | C From Date | 071508 | C Days | 15 | C To Date | 072908 |
| Television | xx | T From Date | 071508 | T Days | 15 | T To Date | 072908 |
| Visitation | xx | V From Date | 071508 | V Days | 15 | V To Date | 072908 |

| [ ] Loss of All Dayroom Privileges | [ ] Probation _____ Days | [ ] Stay | [ ] Loss of Correspondence |
|---|---|---|---|
| [ ] Loss of Inmate Work Status _____ Days | [ ] Stay | | Entered into Tiburon 071608 |
| [ ] Sentence Suspended for: _____ Days | If violated within the designated period, punishment will be imposed in addition to the new punishment | | |

Other: _____

I agree to waive my right to the Disciplinary Hearing, plead No Contest to the rule violation(s) and accept the sanctions listed above. **I also agree to waive my right to appeal this action.** I further understand that this action may be considered for Habitial Disrupter status in future administrative actions.

| Inmate's Signature: | JACKSON, RACHEL | Date: 7-18-08 |
|---|---|---|

| [ ] I choose to appear at the Disciplinary Hearing | Witnessed, Pumph #4122 | 7-18-08 |
|---|---|---|
| | Mitch C#700 | 7/18/08 |
| Inmate's Signature: | Date: | Officer's Signature: | Date/Time: |

| Supervisor's Signature: | Sgt L. Hutchinson #664 | Date: | 071608 |
|---|---|---|---|
| Copy served to inmate date/time: | 7/17/08 | Officer Init./Emply#: | EM#76 |

2450099
**EXHIBIT A-3**

Page _1_ of _4_          SINGLE CELL STATUS SHEET

| Name: Jackson, Rachel | Booking # 083339U | Date: 07-16-08 | Time: 0558 |
|---|---|---|---|

| Authorizing Treatment /Security Staff: Medical (TCJ) | Housing From: MDO-10 | To: 3VC i |
|---|---|---|

| Visuals | 15 minute: (Y) N | 30 minute Visuals: Y    N | Firewatch: (Y) N |
|---|---|---|---|
| | Level Status 1 2 3 | Protective Custody | Administrative Separation |

| Reason: | Involuntary Medication | Restraints | (Suicidal) | Escape Risk |
|---|---|---|---|---|
| | Assaultive | Psychiatric Observe | Harmful to Self | Other: |

| Restrict From: | Commissary | Telephone | Blanket | Writing Utensils | Conditions: | (Cloth gown) |
|---|---|---|---|---|---|---|
| (ALL) | Visitation | Clothing | Recreation | Eating Utensils | Paper gown | (Styro tray) |
| | Bedding | Library | Razor | Personal Property | Ordered By/Date: | |

| On Duty Supervisor Initial Review: Jvn 20 | Time: 1000 | Reason: |
|---|---|---|
| Comments: | | FSP |

**Y-Yes  N-Not Offered  D-Declined**

Date: 07-16-08                                                          Staff Initial required each shift

| Shift | Meals | Shower | Phone | Recreation | Cell Clean up | Officer | Supervisor | Medical |
|---|---|---|---|---|---|---|---|---|
| C | Y N (D) | Y (N) D | Y (N) D | Y (N) D | Y (N) D | #4907 | EMMY | AB489 |
| A | (Y) N D | Y (N) D | Y (N) D | Y (N) D | Y (N) D | 14904 | Sqfns 20 | AB489 |
| B | (Y) N D | Y (N) D | Y (N) D | Y (N) D | Y (N) D | MB403 | 24/37 | KST m |

Counselor Signature and comments: BG must → shower cup of water at other time

Date: 7/17/08                                                          Staff Initial required each shift

| Shift | Meals | Shower | Phone | Recreation | Cell Clean up | Officer | Supervisor | Medical |
|---|---|---|---|---|---|---|---|---|
| C | (Y) N D | Y (N) D | Y (N) D | Y (N) D | Y (N) D | MLQ4 | XMMY | 3052 |
| A | (Y) N D | (Y) N D | Y (N) D | Y (N) D | Y (N) D | Y4P9 | Sfns 20 | Lmbt 3 |
| B | (Y) N D | (Y) N D | Y (N) D | Y (N) D | Y (N) D | PU 2R94 | 27237 | K-371 |

Counselor Signature and comments:

Date: 18 July 2008                                                      Staff Initial required each shift

| Shift | Meals | Shower | Phone | Recreation | Cell Clean up | Officer | Supervisor | Medical |
|---|---|---|---|---|---|---|---|---|
| C | (Y) N D | Y (N) D | Y (N) D | Y (N) D | Y (N) D | S9091 | Len 2/1 | MY254 |
| A | (Y) N D | Y (N) D | Y (N) D | Y (N) D | Y (N) D | 987099 | Sfns 20 | 489 HH |
| | Y N D | Y N D | Y N D | Y N D | Y N D | | | |

Counselor Signature and comments:

Date:                                                                   Staff Initial required each shift

| Shift | Meals | Shower | Phone | Recreation | Cell Clean up | Officer | Supervisor | Medical |
|---|---|---|---|---|---|---|---|---|
| | Y N D | Y N D | Y N D | Y N D | Y N D | | | |
| | Y N D | Y N D | Y N D | Y N D | Y N D | | | |
| | Y N D | Y N D | Y N D | Y N D | Y N D | | | |

Counselor Signature and comments: Cleared by Dr Ford

Housing assignment upon discontinuation of single cell status: Moved to 3J01B

Comments:

| Building Lieutenant Review: | Date: |
|---|---|

Rev. 11/04   Everyone Drive / Corrections Bureau / Forms - Administrative
Route original to Inmate Incarceration File upon completion via the Building Lieutenant

Documentation of Visual observations, including all unusual, pertinent, and critical events.
Annotate each shift change

**Name:** Jackson, Poole **Booking #** 18-3229 4 **Housing:** 3VC1

| DATE / TIME | OFFICER INITIALS | OBSERVATIONS / COMMENTS | DATE / TIME | OFFICER INITIALS | OBSERVATIONS / COMMENTS |
|---|---|---|---|---|---|
| 7/16 0609 | EF 4307 | Appear to be sleep | 7/16 1524 | CU34U3 | Standing |
| 7/16 0024 | EF 4307 | Sillinapown | 7/16 1538 | CU34U3 | Walking Around |
| 7/16 0639 | EF 4307 | In the down | 7/16 1552 | CU34U3 | Standing given styro |
| 7/16 0659 | JL 4228 | Sleeping | 7/16 1555 | CU34U3 | Eating |
| 7/16 0714 | JL 4228 | sleeping | 7/16 1616 | CU34U3 | Sitting |
| 7/16 0728 | JL 4228 | sleeping | 7/16 1625 | CU34U3 | Talking to Ofc. Poole |
| 7/16 6743 | JL 4228 | sleep-n | 7/16 1637 | CU34U3 | Standing yelling |
| 7/16 0757 | JL 4228 | Sleeping | 7/16 1650 | QU34U3 | talking to ofc. Andrews |
| 7/16 0817 | JL 4228 | sleeping | 7/16 1705 | CU34U3 | Sitting Down |
| 7/16 0815 | JL 4228 | Talk to Dr. Ford | 7/16 1720 | CU34U3 | Laying Down |
| 7/16 0824 | JL 4228 | Sitting down | 7/16 1735 | CU34U3 | Laying Down |
| 7/16 0839 | JL 4228 | Sitting down | 7/16 1750 | CU34U3 | Laying Down |
| 7/16 0453 | JL 4228 | Laying down | 7/16 1805 | CU34U3 | Laying Down |
| 7/16 0905 | JL 4228 | Laying down | 7/16 1820 | CU34U3 | Laying Down |
| 7/16 0920 | JL 4228 | sleeping | 7/16 1835 | CU34U3 | Laying Down |
| 7/16 0935 | JL 4228 | sleeping | 7/16 1850 | CU34U3 | Laying Down |
| 7/16 0950 | JL 4228 | sleeping | 7/16 1903 | CU34U3 | Laying Down |
| 7/16 1005 | JL 4228 | sleeping | 7/16 1916 | CU34U3 | Laying Down |
| 7/16 1020 | JL 4228 | Sleep-s | 7/16 1930 | CU34U3 | Laying Down |
| 7/16 1035 | JL 4228 | Sleeping | 7/16 1945 | CU34U3 | Standing by Door |
| 7/16 1050 | JL 4228 | Sleeping | 7/16 2000 | CU34U3 | Standing by Door |
| 7/16 1105 | JL 4228 | sleeping | 7/16 2013 | CU34U3 | Talking to Nurse |
| 7/16 1110 | JL 4228 | Standing @ door | 7/16 2030 | CU34U3 | Laying down |
| 7/16 1135 | JL 4228 | Standing @ door | 7/16 2045 | CU34U3 | Laying down |
| 7/16 1150 | JL 4228 | sleeping | 7/16 2100 | CU34U3 | Sitting down |
| 7/16 1205 | JL 4228 | Sleeping | 7/16 2120 | CU34U3 | Laying down |
| 7/16 1220 | JL 4228 | sleeping | 7/16 2142 | CU34U3 | Laying down |
| 7/16 1238 | JL 4228 | sleeping | 7/16 7200 | CU34U3 | Sleeping |
| 7/16 1250 | JL 4228 | sleeping | 7/16 2215 | CU34U3 | Sleeping |
| 7/16 1305 | JL 4228 | Sleeping | 7/16 2230 | CU34U3 | Sleeping |
| 7/16 1320 | JL 4228 | Sleeping | 7/16 2245 | CU34U3 | Sleeping |
| 7/16 1335 | JL 4228 | Sleeping | 7/16 2255 | M184 | sleeping |
| 7/16 1350 | JL 4228 | sleeping | 2310 | | sleeping |
| 7/16 1400 | Md 4242 | Sleeping | 2326 | | sleeping |
| 7/16 1415 | JL 4228 | Sleeping | 2339 | | sleeping |
| 7/16 1430 | JL 4228 | Sleeping | 2353 | | Sitting up awake |
| 7/16 1446 | JL 4228 | sleeping | 11/17 0606 | | laying down |
| 7/16 1453 | JL 4228 | Sleeping | 0618 | | laying down |
| 7/16 1458 | CU34U3 | laying down | 0624 | | |
| 7/16 1510 | CU34U3 | Screaming | 0040 | | laying down |

2450125
EXHIBIT A-3

Documentation of Vist... observations, including all unusual, pertinent, and cn... events.
Annotate each shift change

Name: Jackson Raphel   Booking # 08-33294   Housing: 3Y/1

| DATE / TIME | OFFICER INITIALS | OBSERVATIONS / COMMENTS | DATE / TIME | OFFICER INITIALS | OBSERVATIONS / COMMENTS |
|---|---|---|---|---|---|
| 7/17 0052 | | Laying down | 1015 | K3820 | Standing |
| 7/17 0100 | AW1589 | sleeping | 1030 | K3820 | eating (lunch) |
| 7/17 0115 | AW 1589 | sleeping | 1045 | K3820 | sitting |
| 7/17 0130 | AW589 | sleeping | 1100 | K3820 | laying down |
| 0142 | AW1589 | sleeping | 1115 | K3820 | Standing |
| 0200 | W1589 | Sleeping | 1130 | K3820 | standing |
| 0215 | AW1589 | Sleeping | 1145 | K3820 | Standing |
| 0230 | AW1589 | sleeping | 1200 | K3820 | Standing at door |
| 0245 | ME3052 | medical here | 1215 | K3820 | standing at door |
| 0245 | AW1589 | sleeping | 1230 | K3820 | laying down |
| 0300 | AW1589 | Sleeping | 1245 | K3820 | laying down |
| 0313 | AW1589 | sleeping | 1300 | K3820 | laying down |
| 0331 | AW1589 | sleeping | 1315 | K3820 | sleeping |
| 0350 | AW1589 | sleeping | 1330 | K3820 | sitting by door |
| 0405 | AW1589 | sleeping | 1345 | W3820 | sitting by door |
| 0421 | AW1589 | sleeping | 1400 | K3820 | sitting by door |
| 0430 | AW1589 | sleeping | 1415 | K3820 | sitting by door |
| 0445 | AW1589 | Sleeping | 1430 | K3820 | sitting by door |
| 0501 | AW1589 | sleeping | 1445 | K3820 | sitting by door |
| 0517 | AW1589 | sleeping | 1457 | RL407 | laying down |
| 0535 | AW1589 | awake | 1513 | RL407 | laying down |
| 0550 | AW1589 | eating/standing | 1531 | RL407 | standing at door |
| 0607 | AW1589 | sitting up | 1544 | RL407 | standing by door |
| 0640 | AW1589 | sleeping | 1558 | RL407 | laying down |
| 0648 | AW1589 | sleeping | 1618 | RL407 | sitting at door eating |
| | | | 1631 | RL407 | given water sitting at door |
| 11 PM shift | 7/17/08 | | 1650 | RL407 | standing at door |
| 0700 | K3820 | sleeping | 7/17 1708 | RL407 | sitting at door |
| 0715 | K3820 | sleeping | 7/17 1722 | RL407 | sitting by door |
| 0730 | K3820 | sitting at door | 7/17 1743 | RL407 | sitting by door |
| 0745 | K3820 | sitting | 7/7 1800 | RL407 | sitting at door |
| 0800 | K3820 | sitting by door | 7/7 1817 | RL407 | standing at door |
| 0815 | K3820 | sitting by door | 7/17 1832 | RL407 | walking around |
| 0830 | K3820 | sitting on floor | 7/17 1846 | RL407 | standing at door |
| 0845 | K3820 | sitting | 7/17 1901 | RL407 | sitting by door |
| 0900 | K3820 | sitting by door | 7/0 1920 | RL407 | at door |
| 0915 | K3820 | sitting | 7/17 1937 | RL407 | laying down |
| 0930 | K3820 | sitting | 7/17 1951 | RL407 | standing at door |
| 0945 | K3820 | sitting | 7/17 2005 | RL407 | standing at door |
| 1000 | K3820 | standing at door | 7/7 2022 | RL407 | sitting by door |

2450126
EXHIBIT A-3

Documentation of Visual Observations, including all unusual, pertinent, and critical events.
Annotate each shift change



| DATE / TIME | OFFICER INITIALS | OBSERVATIONS / COMMENTS | DATE / TIME | OFFICER INITIALS | OBSERVATIONS / COMMENTS |
|---|---|---|---|---|---|
| 7/17 2039 | RR 4107 | Standing at door | 7-17-08 0347 | S 4091 | Sitting down |
| 7/17 2053 | RR 4107 | Standing in cell | 0406 | S 4091 | Lying down |
| 7/17 2109 | RR 4107 | Standing at door | 0415 | S 4091 | Lying |
| 7/17 2120 | RR 4107 | given a shower | 0430 | S 4091 | sitting |
| 7/17 2125 | RR 4107 | in shower | 0445 | S 4091 | Standing |
| 7/17 2141 | RR 4107 | laying down | 0500 | S 4091 | Standing |
| 7/17 2153 | RR 4107 | lying down | 0515 | S 4091 | Standing |
| 7/17 2207 | RR 4107 | laying down | 0531 | S 4091 | Eating breakfast |
| 7/17 2227 | RR 4107 | lying down | 0545 | S 4091 | Sitting |
| 7/17 2245 | RR 4107 | laying down | 0600 | S 4091 | Standing |
| 7-17-08 C-Shift Sgt Munoz Murray 9091 Campbell 9298 | | | 0615 | S | Standing |
| 2300 | S 4091 | Lying w/ cloth gown | 0630 | S | Sitting |
| 2315 | S 4091 | Lying | 0647 | S | Lying down |
| 2330 | S 4091 | Lying | 0700 | FOJ099 | standing @ door |
| 2346 | S 4091 | Lying | 0729 | TB | standing @ door |
| 7-18-08 | Date Change 0001 | | 0745 | TB | using toilet |
| 0001 | S 4091 | Lying | 0800 | TB | on intercom |
| 0018 | S 4091 | Lying | 0820 | TB | at door |
| 0030 | S 4091 | Lying | 0835 | AW | Sitting at door |
| 0046 | S 4091 | Lying | 0850 | AW | Sitting at door |
| 0102 | S 4091 | Lying | 0902 | TB | yelling for water |
| 0115 | S 4091 | Lying | 0916 | TB | at door |
| 0130 | S 4091 | Lying | 0942 | TB | lying down |
| 0145 | S 4091 | Lying | 0948 | TB | w/ psych Dr. |
| 0201 | S 4091 | Lying | 1012 | TB | eating chow |
| 0215 | S 4091 | Lying | 1026 | TB | eating |
| 0231 | S 4091 | Lying | 1040 | TB | lying down |
| 0243 | MV 454 | Standing by door | 1112 | TB | lying down |
| 0249 | S 4091 | Given water | 1130 | TB | lying down |
| | | Signed whiver for 15days Lockdown. | 1145 | TB | at door |
| | | | 1200 | TB | in corner |
| 0301 | S 4091 | Lying down | 1221 | TB | in corner |
| 0315 | S 4091 | Lying | 1241 | TB | at door |
| 0320 | S 4091 | States her heart is racing Medical notified will come check blood pressure. | 1300 | TB | talking |
| | | | 1320 | TB | lying down |
| | | | 1332 | TB | getting dressed |
| | | | 1345 | TB | moved out |
| 0330 | S 4091 | Given water | | | |
| 0331 | S 4091 | Nurse Arnie Checking blood pressure | | | |

Name: Jackson, Rachel   Booking # 08 33294   Housing: 3VC1

Printed for: /                                                    Mon Jul 21 08:29:16 2008

**Corrections - Main**                                                          _ □ ×

Medical Information | **Treatment**

| Jail ID | Booking No | MNI | Date | Time | Officer | DX | Start Date |
|---------|-----------|-----|------|------|---------|----|-----------| 
| P-165465 | 0833294 | 1007320 | 07/21/2008 | 05:53 | S0108 | | 07/21/2008 |

Booking Name
JACKSON, RACHEL A

| | | | Date | Time | Officer | DX | Start Date |
|--|--|--|------|------|---------|----|-----------| 
| | | | 07/18/2008 | 12:23 | S4171 | SZO | 07/18/2008 |
| | | | 07/17/2008 | 11:54 | S4171 | SZO | 07/17/2008 |

Juve       Housing

| | | | | Date | Time | Officer | DX | Start Date |
|--|--|--|--|------|------|---------|----|-----------|
N          03   J   01B | 07/17/2008 | 10:50 | S3775 | | 07/17/2008 |
| | | | | 07/16/2008 | 10:59 | S4177 | | 07/16/2008 |

| Name | Date | Time | Officer | Med/Psych/Dental | Service | DX |
|------|------|------|---------|------------------|---------|-----|
| MATHIS, RACHEL ANNETTE | 07/21/2008 | 05:53 | S0108 | M | AFTER | |

| Start Date | Department | Provider | Provider Type | Reason |
|-----------|-----------|----------|---------------|--------|
| 07/21/2008 | HSB | NURSE | LV | NO BREATHING |

End Date       Prescription               Quantity

Amount   Billing Type   Accounting Date   Shift   Cancel Date   Cancel Shift   Outstanding   Document No

Remarks
EMERGENCY CALLED IN 03 C POST.UPON ARRIVAL FOUND IM IN SEMI CURLED
POSITION ON BUNK.NO PULSE. WHEN ATTEMPT AT TURNING IM OVER FOR CPR
SHE WAS RIGID(RIGOR MORTIS)CPR ATTEMPTED BUT POSITION  OF BODY MADE
RESUSITATION IMPOSSIBLE.EMS ARRIVED @ 0607 AND PRONOUNCED IM.

Typ   Key

Control
S0108 4082030630

# MIN/MED PSY. LOCKDOWN

Date: 7/20/2008
## "J" UNIT

Building 3

| Cell | Name | LB | COMMENT | DIET | Bkg# | B | L | D | REC | RZ | 0100 | 0300 | 0500 | 0700 | 1100 | 1300 | 1500 | 1900 | 2100 | 2300 | EHC |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3J01B | JACKSON,RACHAEL | | Y-LKDN | | 08-33294 | N | | | | | | ✓ | \ | ✓ | ✓ | ✓ | \ | ✓ | | | |
| | MIN | | | | HR OUT: Started: 0725  Int: 00h  Ended: 0815  Int: 00m | | | | | | | | | | | | | | | | |
| 3J02B | MAYS, CARLA | | Y-LKDN | | 08-31691 | N | N | | | | | ✓ | \ | ✓ | ✓ | ✓ | | ✓ | | | |
| | MIN | | | | HR OUT: Started: 0830  Int: 00h  Ended: 0930  Int: 00m | | | | | | | | | | | | | | | | |
| 3J03B | LUNT, JULIE | | OPEN Y | | 08-22014 | N | N | | | | | ✓ | \ | ✓ | ✓ | ✓ | \ | ✓ | | | |
| | MED | | | | HR OUT: Started: 1300  Int:  Ended:  Int: | | | | | | | | | | | | | | | | |
| 3J04B | APONTE, ERIKA | | Open | | 08-28419 | N | N | 3 | | | ✓ | ✓ | \ | ✓ | ✓ | \ | ✓ | \ | | | |
| | MIN | | | | HR OUT: Started: 1300  Int:  Ended:  Int: | | | | | | | | | | | | | | | | |
| 3J05B | SHOCKLEY,DEBRA | | Y-LKDN | | 08-33725 | N | | | | | | ✓ | \ | ✓ | ✓ | ✓ | | | ✓ | | |
| | MIN | | | | HR OUT: Started: 0930  Int: 00h  Ended: 1030  Int: 00m | | | | | | | | | | | | | | | | |
| 3J06B | TERRACIANO,BONNIE | | Y LKDN | | 08-29586 | N | N | | | | | ✓ | \ | ✓ | ✓ | ✓ | \ | ✓ | | | |
| | MIN | | | | HR OUT: Started: 1045  Int: 00h  Ended: 1145  Int: 00m | | | | | | | | | | | | | | | | |
| 3J07B | | | | | | | | | | | | | | | | | | | | | |
| | | | | | HR OUT: Started:  Int:  Ended:  Int: | | | | | | | | | | | | | | | | |
| 3J08B | ROMBY,RACHEL | | OPEN | | 08-32772 | N | N | / | | | ✓ | ✓ | \ | ✓ | ✓ | \ | ✓ | ✓ | | | |
| | MIN | | | | HR OUT: Started: 1300  Int:  Ended:  Int: | | | | | | | | | | | | | | | | |
| 3J09B | JOHNSON,BRANDY | | OPEN | | 08-33219 | N | N | 2 | | | | ✓ | \ | ✓ | ✓ | \ | ✓ | | | |
| | MIN | | | | HR OUT: Started: 1300  Int:  Ended:  Int: | | | | | | | | | | | | | | | | |
| 3J10B | HOUSE,BARBARA | | OPEN | | 08-33366 | N | | | | | ✓ | ✓ | | ✓ | ✓ | \ | ✓ | | | |
| | DEAF | | | | HR OUT: Started: 1300  Int:  Ended:  Int: | | | | | | | | | | | | | | | | |
| 3J11B | HUGHES, JEANETTE | | Y-LKDN | STYRO | 08-32188 | N | N | | | | ✓ | ✓ | \ | ✓ | ✓ | \ | ✓ | | | |
| | MED | | | | HR OUT: Started:  Int:  Ended:  Int: | | | | | | | | | | | | | | | | |
| 3J12B | DAVIS, SHERRI | | OPEN Y | | 08-33649 | N | N | | | | ✓ | ✓ | | ✓ | ✓ | \ | ✓ | | | |
| | MIN | | | | HR OUT: Started: 1300  Int:  Ended:  Int: | | | | | | | | | | | | | | | | |

KEY:
P = Pregnant
S = Misc. Special
D = Diabetic
V= Veggie
PM = PM Snack
*=Hour Out Only

Total In:
Total Out:
Unit Total
Initials
Emp. #

OPEN PSYCH STATUS NOTES

| Name: JACKSON RACHAEL | | | Booking # 08 33294 | Date Initiated: 7/8/08 | | Time: | | |
|---|---|---|---|---|---|---|---|---|
| | | | | Housing: 3 J1 B | | | | |

**Y-Yes  N-Not Offered  D-Declined**

| Date: | | | | | | Staff Initial required each shift | | |
|---|---|---|---|---|---|---|---|---|
| Shift | Meals | Shower | Hr Out | Recreation | Cell Clean up | Meds | Officer | Counselor |
| A | Y N D | Y N D | Y N D | Y N D | Y N D | Y N D | | |
| B | Y N D | Y N D | Y N D | Y N D | Y N D | Y N D | | |
| C | Y N D | Y Ⓝ D | Y Ⓝ D | Y Ⓝ D | Y Ⓝ D | Y Ⓝ D | se4234 | |
| Behaviors: | | | | | | | | |

| Date: 7/19/08 | | | | | | Staff Initial required each shift | | |
|---|---|---|---|---|---|---|---|---|
| Shift | Meals | Shower | Hr Out | Recreation | Cell Clean up | Meds | Officer | Counselor |
| A | Ⓨ N D | Ⓨ N D | Ⓨ N D | Y Ⓝ D | Ⓨ N D | Y Ⓝ D | AW191L | |
| B | Ⓨ N D | Y Ⓝ D | Y Ⓝ D | Y Ⓝ D | Y Ⓝ D | Ⓨ N D | 004344 | |
| C | Y N D | Y Ⓝ D | Y Ⓝ D | Y Ⓝ D | Y Ⓝ D | Y Ⓝ D | | |
| Behaviors | Claims Chest is hurting/ unable to breathe/ | | | | | | | |
| | Claustrophobic in room/settle down for a little bit/ continues | | | | | | | |
| | wants to go to State Hospital | | | | | | | |

| Date: 20 JUL 08 | | | | | | Staff Initial required each shift | | interior |
|---|---|---|---|---|---|---|---|---|
| Shift | Meals | Shower | Hr Out | Recreation | Cell Clean up | Meds | Officer | Counselor |
| A | Ⓨ N D | Ⓨ N D | Ⓨ N D | Y Ⓝ D | Ⓨ N D | Ⓨ N D | after tour | |
| B | Ⓨ N D | Y Ⓦ D | Y Ⓦ D | Y Ⓦ D | Y Ⓦ D | Ⓨ N D | | |
| C | Y Ⓝ D | Y Ⓝ D | Y Ⓝ D | Y Ⓝ D | Y Ⓝ D | Y Ⓝ D | | |
| Behaviors: | | | | | | | | |

(margin note: continues to press very anxious)

| Date: | | | | | | Staff Initial required each shift | | |
|---|---|---|---|---|---|---|---|---|
| Shift | Meals | Shower | Hr Out | Recreation | Cell Clean up | Meds | Officer | Counselor |
| A | Y N D | Y N D | Y N D | Y N D | Y N D | Y N D | | |
| B | Y N D | Y N D | Y N D | Y N D | Y N D | Y N D | | |
| C | Y N D | Y N D | Y N D | Y N D | Y N D | Y N D | | |
| Behaviors: | | | | | | | | |

| Date: | | | | | | Staff Initial required each shift | | |
|---|---|---|---|---|---|---|---|---|
| Shift | Meals | Shower | Hr Out | Recreation | Cell Clean up | Meds | Officer | Counselor |
| A | Y N D | Y N D | Y N D | Y N D | Y N D | Y N D | | |
| B | Y N D | Y N D | Y N D | Y N D | Y N D | Y N D | | |
| C | Y N D | Y N D | Y N D | Y N D | Y N D | Y N D | | |
| Behaviors: | | | | | | | | |

| **Building Supervisor Review:** | Date: | ROUTE TO SGT OFFICE WHEN COMPLETED | Rev 10/15/06 Everyone/ Bldg 3/ Forms |
|---|---|---|---|

2450136
EXHIBIT A-3

Custodial Death Report                                                          Page 1 of 3



**ATTORNEY GENERAL OF TEXAS**
GREG ABBOTT

**Custodial Death Report**
**Filed: 7-29-2008 4:30 pm**
**PA08171CJ**

---

### Agency/Facility Information

**Name:** Travis County Sheriff's Dept.
**Address:** P. O. Box 1748
**City, Zip:** Austin, 78767
**Phone:** 512-854-9770
**Director:** Greg Hamilton
**Name of Report Filer:** Russell Marburger
**Email of Report Filer:** russell.marburger@co.travis.tx.us

### Identity Of Deceased

**Name:** Rachel Annette Jackson
**Race/Ethnicity:** African-American
**Sex:** Female
**DOB:** 02-02-1987
**Age:** 21

### Date Of Custody (arrest, incarceration)

7-15-2008 12:17 am

### Date Of Death

7-21-2008 6:07 am

### Where did the event causing the death occur?

**Address:** 3614 Bill Price Rd.
**City:** Austin
**County:** Travis

### Has a medical examiner or coroner conducted an evaluation to determine a cause of death?

Yes, results are available

### Apparent Manner Of Death:

Natural Causes/Illness
   **Description:** Schizoaffective disorder

### Medical Cause Of Death:

Complications of treatment for schizoaffective disorder

### Was the cause of death the result of a pre-existing medical condition or

2450256
EXHIBIT A-3

Custodial Death Report                                          Page 2 of 3

**did the deceased develop the condition after admission?**

Pre-existing medical condition

**Had the deceased been receiving treatment for the medical condition after admission to your jail's jurisdiction?**

Yes

Description: treatment of schizoaffective disorder

**Type of Custody**

Jail - single cell

**What were the most serious offenses with which the deceased was (or would have been charged with at the time of death)?**

1. POCS/ Motion to proceed w/ adjudication of guilt
Status: Filed

**Type of Charges**

Alcohol/Drug Offense

**Did the deceased die from a medical condition or from injuries sustained at the crime/arrest scene?**

Medical condition only (e.g. heart attack)

**If injured at the crime/arrest scene, how were these injuries sustained?**

Not applicable

**Was the deceased under restraint in the time leading up to the death or the events causing the death?**

No

**At any time during the arrest/incident, did the deceased:**

Appear intoxicated (either alcohol or drugs)? - Yes.
Threaten the officers(s) involved? - No.
Resist being handcuffed or arrested? - No.
Try to escape/flee from custody? - No.
Grab, hit or fight with the officer(s) involved? - No.
Use a weapon to threaten or assault the officer(s) involved? - No.
Other - No.
Not Applicable - No.

**What type of weapon(s) caused the death?**

Not Applicable

**Where did the deceased die?**

At law enforcement facility

**What was the time and date of the deceased's entry into the law**

2450257

EXHIBIT A-3

Custodial Death Report                                                                Page 3 of 3

**enforcement facility where the death occurred?**

7-15-2008 11:45 pm

**At the time of entry into the facility, did the deceased:**

Appear intoxicated (either alcohol or drugs)? - No.
Exhibit any mental health problems? - Yes.
Exhibit any medical problems? - No.
Not Applicable - No.

**If death was an accident or homicide, who caused the death?**

Not applicable; cause of death was suicide, intoxication or illness/natural causes

**If death was an accident, homicide or suicide, what was the means of death?**

Not applicable; cause of death was intoxication or illness/natural causes

**Summary of How the Death Occurred:**

Subject was observed lying in her cell and appeared asleep during the serving of breakfast. After showing no signs of movement, decedent was found unresponsive and determined to be deceased. Life saving efforts were not attempted due to the onset of rigor mortis. Decedent was an MHMR client and was being treated for mental disabilities at the time of death. Death was pronounced by Dr. Edward Racht.

2450258
EXHIBIT A-3